■ HARPER-LAWRENCE, INC., et al., Respondents, v INTERSHOE, INC., et al., Appellants. [703 NYS2d 473] —Amended judgment, Supreme Court, New York County (Beatrice Shainswit, J.), entered April 23, 1999, which granted recovery against defendants jointly and severally on the first cause of action in the total amount of $286,422.44, dismissed plaintiffs' second and third causes of action, and severed and continued the fourth cause of action against defendant Garrick-Aug, unanimously modified, on the law, the monetary award as against Garrick-Aug vacated in its entirety and as against defendant Intershoe reduced by one-third, and otherwise affirmed, without costs.

Arnold Dunn, the president of Intershoe, a women's shoe manufacturer with corporate offices in Manhattan, expressed to Barry Goodman, a senior executive of plaintiff real estate broker Harper-Lawrence, an interest in finding a choice (Upper

East Side) location for a flagship retail store. Up until this time, Intershoe's products had been sold primarily through department stores. In September 1995, Henry Doehla succeeded Dunn as Intershoe's chief executive officer, but Dunn was kept on as consultant in connection with finding a new retail location. Dunn gave Harper-Lawrence a 30-day exclusive to locate such premises. Goodman engaged Yair Staav, a real estate agent with the Garrick-Aug agency who had experience in the retail commercial field, to assist him, and they in turn enlisted the aid of Beth Greenwald, a broker with plaintiff New Spectrum. Goodman, Staav and Greenwald worked as a team in furtherance of this quest, and agreed to share equally any commission earned from finding a suitable lease for Intershoe.

Staav came up with the idea of looking at properties already occupied, and then exploring when they might become available. On November 2, 1995, Goodman took Dunn on a walking tour to show him two rented properties on Madison Avenue between 57th and 66th Streets. Staav was aware that the retail tenant at one of those locations (765-771 Madison Avenue, shared by two stores) had recently opened another store in the downtown SoHo district, and might be interested in relinquishing its uptown lease. Dunn expressed interest in this location and another at 650 Madison Avenue, and within a month Greenwald was able to provide him with data on square footage and rental availability. Dunn brought this information to the attention of Doehla, who looked at the locations and authorized Dunn to proceed with negotiations. On December 14, Staav provided Dunn with a floor plan of the property at 771 Madison Avenue and confirmation that the current tenant had indeed expressed interest in leaving, and further advised that the landlord would be willing to lease the space at $769,500 per year ($285 per square foot). In a separate memo of the same date, the team asked for an extension of their exclusive to negotiate a lease on Intershoe's behalf at this site and the other Madison Avenue location they were investigating, and any others as well.

Meanwhile, unbeknownst to Staav and his teammates, Doehla had been independently meeting with Faith Consolo, a more senior agent at Garrick-Aug, concerning four other possible Madison Avenue sites between 56th and 62nd Streets. On the same day that Dunn received the information from plaintiffs' team concerning the 771 Madison Avenue site, Doehla wrote to Consolo and Staav at Garrick-Aug, acknowledging that plaintiffs' team had Dunn's exclusive to pursue the

sites at 650 and 771 Madison Avenue, but adding that Consolo had an exclusive for the four other Madison Avenue properties. "The purpose of this letter," he concluded, "is to avoid any future problems in terms of commissions. Please let me know who should be authorized to negotiate on our part for all six locations." A second letter was simultaneously addressed to Staav, wherein Doehla chided that agent for certain inaccuracies in his presentation to the landlord at 771 Madison Avenue. (E.g., "Arnold Dunn is no longer President and CEO of Intershoe. It is Henry Doehla.") Doehla agreed to send out letters formally appointing plaintiffs' team as agents in dealing with the landlords at 771 and 650 Madison Avenue, but he cautioned Staav to "work with Faith Consolo as to the details of commissions and fees. * * * I do not want to be involved in quarrels between leasing agents." Doehla sent copies of these letters to Goodman and Greenwald.

Four days later, on December 18, 1995, Dunn's letter to Goodman signaled a new tone in their relations. Mentioning the arrival of Consolo on the scene, Dunn advised Goodman that Intershoe would no longer be able to nominate plaintiffs' team as its exclusive agent. In a letter the next day to each member of the team, Dunn acknowledged that "Since you * * * have brought these properties to our attention, we will respect the fact that you have done it and should negotiations actually begin, we would be pleased to have you represent us for the above-mentioned properties." However, Staav's draft letter to these landlords was rewritten on Intershoe stationery, eliminating Staav's name as the writer, as well as any reference to the team members as the agents entitled to commission.

On December 27, 1995, Greenwald passed along to Dunn a FAX from the landlord at 765-771 Madison Avenue that the present store tenant at number 765 (LS Collection) would be permitted to break its lease if it could offer a substantial substitute tenant at an annual rent of at least $770,000. On January 4, 1996, Doehla responded to this letter, advising Greenwald that her services were no longer needed, and indicating that Garrick-Aug (viz., Consolo) would henceforth be representing Intershoe as exclusive agent for the entire Borough of Manhattan. On a copy of this letter sent to Consolo, Doehla gave her the green light to submit the offer of $770,000 to LS Collection's landlord on Intershoe's behalf.

Evidently chagrined that he had left his chosen agents high and dry after all their spade work, Dunn proposed writing to Greenwald to explain the situation. Doehla vetoed that idea,

explaining to Dunn, in a memo on January 17, 1996, that Consolo was a better agent, that her assistant had actually shown the LS Collection store at 765 Madison Avenue to Doehla before Greenwald and Goodman had shown it to Dunn, and that Garrick-Aug had promised to indemnify Intershoe against any third-party claims for broker compensation.

At trial, Doehla tried to deny knowledge of the Goodman-Staav-Greenwald team's progress vis-à-vis acquiring LS Collection's lease, and professed a loss of memory about the team ever having exclusivity with regard to that property. But Doehla was forced, on the witness stand, to acknowledge his deposition testimony in September 1997 to the effect that he had first learned of this property from Dunn, and not from Consolo. Furthermore, Doehla was confronted with the handwritten memorandum he had delivered to his assistant on January 8, 1996 (just four days after he had terminated plaintiffs' services in the letter to Greenwald), wherein he expressed concern about jeopardizing Consolo's commission: "I also told Goldberg, or whatever his name is, to forget about 'LS Collection'. Now the thinking is to have a larger store, such as LS Collection, and we would be prepared to pay $770,000.—per year. The problem here is Arnold [Dunn]'s letter to Goldberg in which he gives him the exclusivity for LS Collection. Frankly, I do not know how to go about this, but I think it would be the best to tell Faith [Consolo] about my dilemma. I want to negotiate on LS Collection, but I do not want any commission problems." Not surprisingly, the trial testimony of this witness was greeted with skepticism by the Trial Justice.

The evidence established that plaintiffs' team (a) came up with the concept of identifying retail space already under lease, (b) introduced Intershoe to the property in question, and (c) negotiated with the landlord on an acceptable buy-out of the existing lease on terms later appropriated by Consolo, all with the knowledge and encouragement of Intershoe. Doehla's letter to Garrick-Aug on December 14, 1995 confirmed that the Greenwald-Staav-Goodman team had exclusive rights to negotiate for a specified period with regard to this and one other property, while Consolo had exclusivity regarding four other designated sites. This all constituted proof of an exclusive agency agreement (*Solid Waste Inst. v Sanitary Disposal*, 120 AD2d 915), breached by Intershoe, under the first cause of action. We agree with the Trial Court that Intershoe's substitution of Garrick-Aug as the exclusive agent to procure this same lease was a breach of Intershoe's agency agreement with plaintiffs' team (*Century 21 A.L.P. Realty v Doller*, 170 AD2d

941). Plaintiffs were thus entitled to the fair and reasonable commission they would have received had Intershoe not breached the agreement (*Kaplon-Belo Assocs. v Cheng*, 258 AD2d 622).

Garrick-Aug allegedly facilitated this usurpation by favoring one of its brokers over another, and abetted the misdeed by discounting Consolo's commission and offering Intershoe indemnification against any anticipated claim for commission from a third party. Garrick-Aug was not named as a party to the first cause of action, and the judgment must accordingly be modified. However, that agency's alleged liability to plaintiffs rests on the equitable theory of implied contract, to prevent its unjust enrichment at their expense (*Curtis Props. Corp. v Greif Cos.*, 212 AD2d 259), and thus the fourth cause of action, severed and continued in the judgment on appeal, is still viable.

Plaintiffs represent two-thirds of the team working on behalf of Intershoe. (The third team member, Staav, an employee of Garrick-Aug, is not a claimant in this action.) Accordingly, plaintiffs should be entitled to seek their pro rata share of the pre-discounted commission earned by Garrick-Aug. This formula would apply to the breach of contract cause of action (*see, Interactive Props. v Doyle Dane Bernbach*, 125 AD2d 265, *lv denied* 70 NY2d 613) as well as to the quantum meruit claim. Concur—Tom, J. P., Wallach, Lerner, Saxe and Buckley, JJ.