[801 NE2d 372, 769 NYS2d 152]

BEVERLY GARRICKS, Respondent, v CITY OF NEW YORK, Appellant.

Argued September 16, 2003; decided October 23, 2003

## POINTS OF COUNSEL

*Michael A. Cardozo, Corporation Counsel,* New York City (*Paul L. Herzfeld* and *Francis F. Caputo* of counsel), for appellant. I. Plaintiff failed to present a prima facie case that the City failed to act reasonably in removing snow and ice under the circumstances. The record contained no evidence from which a rational jury could conclude that the City's actions were unreasonable. (*Valentine v City of New York,* 86 AD2d 381, 57 NY2d 932; *Mandel v City of New York,* 44 NY2d 1004; *Martinez v Columbia Presbyt. Hosp.,* 238 AD2d 286; *Rapoport v City of New York,* 281 App Div 33, 306 NY 636; *Reutlinger v City of New York,* 255 App Div 848, 281 NY 592; *Sing Ping Cheung v City of New York,* 234 AD2d 91; *Yonki v City of New York,* 276 App Div 407, 303 NY 852; *Taylor v City of Yonkers,* 105 NY 202; *Weiss v Fote,* 7 NY2d 579; *McCormack v City of New York,* 80 NY2d 808.) II. The trial court erred by not allowing the jury to be informed that under Administrative Code of the City of New York § 16-123, property owners have a duty to remove snow and ice from the sidewalk abutting their property. (*Valentine v City of New York,* 86 AD2d 381; *Kuci v Manhattan & Bronx Surface Tr. Operating Auth.,* 219 AD2d 486, 88 NY2d 923; *Marine Midland Bank v Russo Produce Co.,* 50 NY2d 31.)

*Pollack, Pollack, Isaac & DeCicco,* New York City (*Brian J. Isaac* and *William Peterman* of counsel), and *Corpina, Piergrossi, Overzat & Klar, LLP,* for respondent. The City did not, as a matter of law, on this record, comply with its nondelegable duty to maintain its roads and sidewalks in a reasonably safe condition; the City submitted no proof of budgetary constraints that would have prevented it from complying with this duty. (*Weiss v Fote,* 7 NY2d 579; *Annino v City of Utica,* 276 NY 192; *Lopes v Rostad,* 45 NY2d 617; *Pettengill v City of Yonkers,* 116 NY 558; *City of Rochester v Campbell,* 123 NY 405; *Conrad v Village of Ithaca,* 16 NY 158; *Harrington v City of Buffalo,* 121 NY 147; *Taylor v City of Yonkers,* 105 NY 202; *Williams v City of New York,* 214 NY 259; *Yonki v City of New York,* 276 App Div 407, 303 NY 852.)

*J. Wade Beltramo,* Albany, for New York State Conference of Mayors and Municipal Officials, amicus curiae. I. The Appellate Division erred in affirming the Supreme Court's decision

because plaintiff did not establish a prima facie case showing that defendant's snow removal plan was either inadequate or improperly carried out. (*Valentine v City of New York,* 86 AD2d 381, 57 NY2d 932; *Weiss v Fote,* 7 NY2d 579; *Tuchrello v State of New York,* 190 Misc 2d 664; *Yonki v City of New York,* 276 App Div 407, 303 NY 852; *Friedman v State of New York,* 67 NY2d 271.) II. The failure to require plaintiff to present a prima facie case essentially makes the City of New York the insurer for plaintiff's injuries. (*Tuchrello v State of New York,* 190 Misc 2d 664; *Tomassi v Town of Union,* 46 NY2d 91; *Brooks v New York State Thruway Auth.,* 73 AD2d 767, 51 NY2d 892.)

**OPINION OF THE COURT**

GRAFFEO, J.

In this negligence action arising from plaintiff's fall on an icy sidewalk, defendant City of New York appeals from an Appellate Division order that affirmed a jury verdict in plaintiff's favor. Because we conclude that the City was erroneously precluded from presenting relevant evidence regarding the reasonableness of its response to the snowstorm, we reverse and remit for a new trial.

Plaintiff Beverly Garricks was injured when she slipped and fell on an ice-covered sidewalk near her home in the Bronx. She commenced this personal injury action against the City and the owners of the property abutting the sidewalk where her accident occurred. After plaintiff obtained a default judgment against the property owners, the case against the City proceeded to trial.

Plaintiff presented evidence that at approximately 9:00 A.M. on February 6, 1995, she was walking on a sidewalk accompanied by her two children. Over 10 inches of snow had fallen on February 4, 1995 and, during the two days following the storm, average temperatures were below freezing with wind speeds averaging between 18 and 21 miles per hour. As plaintiff approached the curb to cross the street, she slipped and fell, fracturing her elbow. Plaintiff described the condition of the sidewalk where she fell as covered with hard, thick ice with no cleared path and no salt or sand on the surface.

The City contended at trial that its snow removal efforts following the February 4 storm were reasonable. In order to address public safety, traffic and commerce needs, the City claimed that it prioritized municipal snow removal efforts into three phases: main highways and arteries were cleared first, then

streets with bus stops and streets that connect residential areas with main roads and, finally, residential streets. Crosswalk cleaning, which involved the manual shoveling of crosswalks, hydrants and bus stops, was generally not undertaken until completion of snow removal from roadways.

The City offered testimony that its snow removal operations in response to the storm began on February 4 and continued through February 10, 1995. The snow removal district that encompassed the area where plaintiff fell included 308 miles of plow routes and 635 crosswalks. The sanitation supervisor who oversaw operations for this district stated that, during the three days from February 4 to February 6, the City deployed all available workers and equipment, including salt spreaders, plows and front-end loaders. In addition, temporary workers were hired for crosswalk clearing. Streets in all three phases had been cleared by the early morning hours of February 5 (at least 24 hours before plaintiff's sidewalk accident) and work on the crosswalks was ongoing.

When the City's counsel attempted to question the sanitation supervisor about Administrative Code of the City of New York § 16-123, which imposes a duty on landowners to clear snow from sidewalks abutting their property, Supreme Court sustained plaintiff's objection and a sidebar discussion ensued.[1] The court subsequently reiterated that it sustained the objection.

At the close of proof, the trial court reserved decision on the City's motions for dismissal of plaintiff's complaint and for a directed verdict. The City renewed its request to submit Administrative Code evidence at the charge conference, indicating that it had intended to elicit testimony to support its position that the ordinance and the City's necessary reliance on property owners were relevant facts for the jury to consider in assessing the reasonableness of the City's response. Because it had been unable to offer proof on this issue, the City asked the court to take judicial notice of section 16-123 and inform the jury of its existence. The City further urged that its sole purpose in seeking introduction of the evidence was related to the

---

1.  Section 16-123 of the Administrative Code of the City of New York provides, in pertinent part, that "[e]very owner . . . or other person, having charge of any building or lot of ground in the city, abutting upon any street where the sidewalk is paved, shall, within four hours after the snow ceases to fall . . . remove the snow or ice . . . from the sidewalk and gutter, the time between nine post meridian and seven ante meridian not being included in the above period of four hours." (*Id.*, subd [a].)

reasonableness question and suggested that the court issue a limiting instruction to that effect. The court declined the City's request.

The jury returned a verdict finding the City negligent and awarding plaintiff $50,000 for past pain and suffering, $450,000 for future pain and suffering and $7,800 for lost earnings. The court denied the City's motion to dismiss or to set aside the verdict as against the weight of the evidence, holding that the testimony presented a question of fact for jury determination as to the reasonableness of the City's response time and efforts. The court concluded, however, that the award was excessive and ordered a new trial on damages for future pain and suffering unless plaintiff stipulated to a reduction of those damages to $250,000. Plaintiff so stipulated and judgment was entered. A divided Appellate Division affirmed and the City now appeals as of right based on a two-Justice dissent.

In this Court, the City argues that the trial court committed reversible error when it refused to permit the jury to consider the duty of property owners to remove snow and ice from abutting sidewalks in determining reasonableness. The City acknowledges that the Administrative Code provision does not extinguish its obligation to maintain the sidewalks but contends that its reliance on property owners' compliance with the ordinance was a relevant factor for the jury to weigh in assessing whether the City was liable.[2]

Courts have long recognized that where a municipality has enacted an ordinance requiring abutting landowners to remove snow from sidewalks "it may, before taking any action itself, wait a reasonable time for them to perform their legal duty" (*Valentine v City of New York*, 86 AD2d 381, 387 [1st Dept 1982],

---

**2.** On July 16, 2003, two new Administrative Code provisions were enacted into law that affect property owners' sidewalk maintenance obligations. One of the amendments, which apply to all residential property of more than three dwelling units, provides that "[i]t shall be the duty of the owner of real property abutting any sidewalk . . . to maintain such sidewalk in a reasonably safe condition. . . . Notwithstanding any other provision of law, the city shall not be liable for any injury to property or personal injury, including death, proximately caused by the failure to maintain sidewalks . . ." (*see* Local Law No. 49 [2003] of City of New York). Failure to maintain a sidewalk in reasonably safe condition includes "the negligent failure to remove snow, ice, dirt or other material from the sidewalk" (*see id.*). Another amendment requires owners of such properties to carry personal injury and property damage liability insurance to compensate for injuries caused by the failure to maintain sidewalks in reasonably safe condition (*see* Local Law No. 54 [2003] of City of New York § 1). The amendments took effect 60 days after approval and apply to accidents occurring on or after the effective date.

*affd* 57 NY2d 932 [1982]; *see Candelier v City of New York*, 129 AD2d 145 [1st Dept 1987]; *Taylor v City of Yonkers*, 105 NY 202 [1887]). Of course, such an ordinance does not relieve the municipality of its obligation to maintain sidewalks in a reasonably safe condition and, where property owners fail to comply with the ordinance within a reasonable time, the municipality must either enforce the ordinance or undertake the necessary work itself (*see Taylor*, 105 NY at 205-206; *see also Smith v City of New York*, 282 App Div 495 [1st Dept 1953], *affd* 307 NY 843 [1954]; *Yonki v City of New York*, 276 App Div 407 [1st Dept 1950], *appeal dismissed* 303 NY 852 [1952]). Evidence of a municipality's reliance on property owners to perform this duty and of its efforts to enforce the ordinance within a reasonable time is relevant in determining whether the municipality breached its duty (*see Smith*, 282 App Div at 496; *Yonki*, 276 App Div at 409-410; *see also* 1B NY PJI3d 1143 [2003] [municipality's efforts to enforce such a provision are relevant to determine whether it has acted with reasonable care]).

Here, the trial court precluded the City from introducing testimony as to the existence of the ordinance, the City's enforcement measures or its reliance on property owners as part of its snow removal response plan. Had such evidence been admitted, it would have been proper for the jury, charged with applying the standard of care and deciding whether the City was reasonable, to consider the ordinance and whatever efforts the City undertook in relation to the ordinance in reaching its verdict. In this case, such evidence, if offered in support of the City's theory that its response to the storm was reasonable, could have affected the outcome of the trial and exclusion of the evidence was not, therefore, harmless error (*see Marine Midland Bank v Russo Produce Co.*, 50 NY2d 31, 43 [1980]; *Kuci v Manhattan & Bronx Surface Tr. Operating Auth.*, 219 AD2d 486, 487 [1st Dept 1995], *affd* 88 NY2d 923 [1996]). Hence, reversal is warranted.

The City further contends that it was entitled to a directed verdict dismissing plaintiff's complaint. We disagree. On this record, we cannot say that plaintiff's evidence was insufficient to raise an issue of fact for the jury (*see Campbell v City of Elmira*, 84 NY2d 505, 509-510 [1994]; *Cohen v Hallmark Cards*, 45 NY2d 493, 499 [1978]).

Accordingly, the order of the Appellate Division should be reversed, with costs, and a new trial ordered.

Chief Judge KAYE and Judges G.B. SMITH, ROSENBLATT and READ concur; Judge CIPARICK taking no part.

Order reversed, etc.