10-0799-CV
**10 Ellicott Square Court Corp. v. Mountain Valley Indemnity Co.**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2010

(Argued: October 8, 2010      Decided: December 23, 2010
Amended: December 28, 2010
Amended: January 31, 2011)

Docket No. 10-0799-CV

-------------------------------------

10 ELLICOTT SQUARE COURT CORPORATION and 5182 GROUP, LLC,

Plaintiffs-Appellees,

- v -

MOUNTAIN VALLEY INDEMNITY COMPANY,

Defendant-Appellant.

-------------------------------------

Before:    SACK and RAGGI, Circuit Judges, and KOELTL, District
Judge.[*]

Appeal by the defendant from a summary judgment entered in the United States District Court for the Western District of New York (William M. Skretny, Chief Judge) in favor of the plaintiffs. The district court's judgment rested on three grounds relevant to this appeal: first, that a contract that had not been signed on behalf of the parties to it nonetheless had been "executed" within the meaning of the primary insurance policy in issue and New York law; second, that the defendant was

---

[*] The Honorable John G. Koeltl of the United States District Court for the Southern District of New York, sitting by designation.

bound to provide insurance coverage to the plaintiffs under an umbrella policy; and third, that in any event the defendant was estopped from denying insurance coverage to the plaintiffs by having issued a certificate of insurance identifying the plaintiffs as additional insureds.  We reverse the district court's determination on the first issue, affirm on the second, and certify to the New York Court of Appeals a question of New York law necessary to our resolution of the third.

Affirmed in part, reversed in part, question certified to the New York Court of Appeals in part, decision reserved in part.

> MAX GERSHWEIR, Hurwitz & Fine, P.C.(Katherine A. Fijal, Esq., of counsel), Buffalo, New York, for Defendant-Appellant.

> JUDITH TREGER SHELTON, Kenney Shelton Liptak Nowak LLP, Buffalo, New York, for Plaintiffs-Appellees.

SACK, Circuit Judge:

The plaintiffs in this action, 5182 Group, LLC, and 10 Ellicott Square Court Corporation, were, respectively, the owner of and construction manager for a commercial building in Buffalo, New York.  They contracted with a third firm, Ellicott Maintenance, Inc., for the building's partial interior demolition.

The construction agreement between the plaintiffs and Ellicott Maintenance required the latter to secure insurance to

2

cover the former for any legal liability arising out of the demolition project. Ellicott Maintenance therefore purchased two policies--one primary, the other "umbrella"--from the defendant Mountain Valley Indemnity Company. The defendant, by its agent LRMP, Inc., issued a certificate of insurance evidencing the policies and the status of the plaintiffs as additional insureds, after receipt of which Ellicott Maintenance began the demolition work.

The primary insurance policy required that the underlying written construction agreement between the named insured, Ellicott Maintenance, and the additional insureds, the plaintiffs in this action, be "executed" in order for any injury for which the plaintiffs sought defense and indemnification to be covered by the policy. Before anyone on behalf of either Ellicott Maintenance or the plaintiffs signed the construction agreement, a worker on the demolition project was injured. When the worker brought suit in New York State court in an attempt to recover for his injuries, the plaintiffs sought defense and indemnification from the defendant insurance company. The defendant declined coverage, arguing that because the construction agreement was neither signed on behalf of the parties nor fully performed prior to the worker's injury, it had not been "executed" under the primary insurance policy issued by the defendant to Ellicott Maintenance, and therefore the plaintiffs did not qualify as additional insureds under either of the policies. The plaintiffs then brought this action in the

3

United States District Court for the Western District of New York seeking a declaratory judgment to the contrary.

The district court (William M. Skretny, Chief Judge) agreed with the plaintiffs, concluding that the construction agreement was "executed" even though it had not been signed or fully performed, and that the plaintiffs therefore were entitled to coverage under both the primary and the umbrella policies. The court also decided that even if the plaintiffs were not entitled to coverage under the terms of the policies, the defendant was estopped from denying coverage because its agent had issued a certificate of insurance to Ellicott Maintenance that listed the plaintiffs as additional insureds. The defendant appeals.

We disagree with the district court's view that under New York law, a contract has been "executed" despite the absence of either a signature by or on behalf of both parties or full performance. Therefore, under its terms, the primary insurance policy's additional insured coverage did not become effective prior to the accident in question. We conclude, however, that the plaintiffs nonetheless were covered under the terms of the umbrella policy because that policy did not require "execution" of an underlying written agreement to take effect.

New York's intermediate appellate courts are divided as to whether, despite the fact that an insurance policy's additional-insured coverage is not in effect under its express terms, a certificate of insurance issued by an agent of the

4

insurer nonetheless may estop the insurer from denying coverage to a party identified as an additional insured on the certificate, even where the certificate contains various disclaimers, such as that it is "for informational purposes only." We therefore certify the following question to the New York Court of Appeals:

> In a case brought against an insurer in which a plaintiff seeks a declaration that it is covered under an insurance policy issued by that insurer, does a certificate of insurance issued by an agent of the insurer that states that the policy is in force but also bears language that the certificate is not evidence of coverage, is for informational purposes only, or other similar disclaimers, estop the insurer from denying coverage under the policy?[1]

---

[1] Subsequent to our decision to submit this certified question to the New York Court of Appeals but before the submission was actually made or that Court could act upon it, the parties settled the underlying litigation. We therefore withdrew our certification. We construed the parties' stipulation as abandoning the defendant's appeal from the district court's estoppel ruling, and accordingly dismissed the appeal of that issue with prejudice. See 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co., --- F.3d ----, 2011 WL 223602, 2011 U.S. App. LEXIS 1565 (2d Cir. Jan. 26, 2011) (per curiam). Despite the parties' settlement of the case, the other parts of this decision stand. See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship, 513 U.S. 18, 26 (1994) ("Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by vacatur." (internal quotation marks omitted)).

5

**BACKGROUND**

The defendant Mountain Valley Indemnity Company ("Mountain Valley") issued a commercial general liability insurance policy, effective March 15, 2003 to March 15, 2004, (the "Primary Policy") to non-party Ellicott Maintenance, Inc., a general contractor in Buffalo, New York.[2] As amended by an additional-insured endorsement, the Primary Policy covered not only Ellicott Maintenance but also any "person or organization with whom [Ellicott Maintenance] agreed, because of a written contract[,] . . . to provide insurance such as is afforded under [the Primary Policy], but only with respect to liability arising out of [Ellicott Maintenance's] operations," and only when "the written contract or agreement [between Ellicott Maintenance and the additional insured] ha[d] been executed . . . prior to the 'bodily injury.'" Mountain Valley Indemnity Co. Commercial Policy No. 331-0013567, Issued to Ellicott Maintenance, Inc., Gen. Liability Extension Endorsement ¶ 11, Decl. of Katherine A. Fijal in Supp. of Mountain Valley's Mot. for Summ. J. ("Fijal Decl.") Ex. J., <u>10 Ellicott Square Court Corp. v. Mountain Valley</u>

---

[2]    In identifying the terms of the Primary Policy, the parties refer the Court to a Renewal Declaration contained in the joint appendix reflecting an insurance policy effective from March 15, 2004, to March 15, 2005. The policy at issue in this litigation, however, was effective from March 15, 2003 to March 15, 2004, the same dates listed on the Certificate of Insurance. Because the parties do not dispute that the Primary Policy was issued, that it was effective from 2003 to 2004, and that it was subject to the same terms and endorsements as are contained in the Renewal Declaration, we rely upon the terms of the Renewal Declaration as evidence of the contents of the Primary Policy.

6

Indem. Co., No. 07-CV-0053 (W.D.N.Y. June 13, 2008). The Primary Policy limited Mountain Valley's liability to one million dollars "per occurrence" of bodily injury, and defined "occurrence" to "mean[] an accident . . . ."

In addition to the Primary Policy, Mountain Valley issued to Ellicott Maintenance an umbrella policy (the "Umbrella Policy") bearing the same effective dates as the Primary Policy. The Umbrella Policy limited Mountain Valley's liability per occurrence to two million dollars "in excess of" the coverage provided by the Primary Policy and stipulated that the Umbrella Policy's general aggregate limit for each annual period was two million dollars. Like the Primary Policy, the Umbrella Policy guaranteed coverage for bodily injury resulting from an occurrence, which it defined as "an accident . . . ," and extended coverage to additional insureds with whom Ellicott Maintenance had "agreed in writing prior to any [injury] . . . to provide insurance such as is afforded" by the Umbrella Policy. Mountain Valley Indem. Co. Commercial Umbrella Policy No. X31-0013568, Issued to Ellicott Maintenance, Inc. at 8, Fijal Decl. Ex. K (the "Umbrella Policy"). Unlike the Primary Policy, the Umbrella Policy did not provide that its coverage of additional insureds was effective only if the written agreement between Ellicott Maintenance and any additional insureds had been "executed."

On or about August 14, 2003, Ellicott Maintenance contracted with plaintiffs 5182 Group, LLC, and 10 Ellicott

7

Square Court Corporation d/b/a Ellicott Development Company ("EDC"), to perform interior demolition work at the Graystone Building in Buffalo, New York, owned by plaintiff 5182 Group, and managed by EDC. The agreement between Ellicott Maintenance and the plaintiffs (the "Construction Agreement") obligated Ellicott Maintenance to procure insurance coverage protecting both itself and the plaintiffs against claims by employees or subcontractors for, _inter alia_, damages resulting from bodily injury. The Construction Agreement required that the insurance be "primary, rather than concurrent with or secondary to [the] Owner's own liability insurance," that it provide coverage of no less than five million dollars,[3] and that Ellicott Maintenance obtain, prior to the commencement of work, "Certificates of Insurance naming [the plaintiffs] as additional insureds." Agreement for Construction, dated Sept. 12, 2003, at 10-11, Fijal Decl. Ex. G. No one signed the Construction Agreement on behalf of either the plaintiffs or Ellicott Maintenance until September 12, 2003.

Some three weeks earlier, on August 19, 2003, Mountain Valley's agent, LRMP, Inc., had issued a certificate of insurance (the "COI") identifying Mountain Valley as the issuer of the Primary Policy and the Umbrella Policy, Ellicott Maintenance as the named insured, and the plaintiffs as "additional insured with

---

[3] While the Primary and Umbrella Policies, each of which limited liability to two million dollars for each annual period, did not together provide the five million dollars in coverage required by the construction agreement, that fact does not affect our resolution of the issues on appeal.

8

respect to project: Graystone." Certificate of Liability Insurance, dated August 19, 2003, Fijal Decl. Ex. L. The COI listed the limits of liability described above--one million dollars per occurrence under the Primary Policy and two million dollars under the Umbrella Policy. The following language appeared in the upper right-hand quadrant of the front of the COI: "THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW." Id. (capitalization in original). The COI also provided that "THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES." Id. (capitalization in original). The reverse side of the COI bore similar language under the heading "DISCLAIMER": "The Certificate of Insurance . . . does not constitute a contract between the issuing insurer . . . and the certificate holder, nor does it affirmatively or negatively amend, extend or alter the coverage afforded by the policies listed thereon." Id. Ellicott Maintenance began work the day after it received the COI.

On September 9, 2003, three days before Ellicott Maintenance owner Theodore S. DiRienzo and EDC owner Carl P. Paladino signed the construction agreement on behalf of the parties to it, David DelPrince, an employee of S&A Rubbish and Debris Removal--a subcontractor hired by Ellicott Maintenance-- was injured when a roof collapsed at the Graystone site.

9

The plaintiffs notified Mountain Valley's agent, LRMP, of DelPrince's injury and potential claim by letter dated October 22, 2003, requesting that Mountain Valley defend and indemnify them in any suit brought by DelPrince. Some six months later, by letter dated April 13, 2004, Mountain Valley informed the plaintiffs that it would not defend or indemnify them because, inasmuch as the Construction Agreement had not been signed on behalf of the parties before DelPrince was injured, "there was not in existence on the date of loss a written contract executed prior to the bodily injury," as required by the terms of the Primary Policy. Letter from Susan Gabriele to 10 Ellicott Square [Court] Corp., dated April 13, 2004, App. to Pls.' Local R. 56.1 Statement of Material Facts in Supp. of Pls.' Mot. for Summ. J. Ex. 10, 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co., No. 07-CV-0053 (W.D.N.Y. June 13, 2008). The letter further stated that even if the plaintiffs qualified as additional insureds under the Primary Policy as of the date of the accident, Mountain Valley would deny coverage because the plaintiffs had failed to timely notify Mountain Valley of DelPrince's injury and possible claim, as required by the Primary Policy.

DelPrince filed suit against EDC, 5182 Group, and Ellicott Maintenance in New York State Supreme Court, Erie County, on October 28, 2004, alleging negligence and violations

10

of the New York Labor Law, and seeking to recover damages for the injuries he sustained.[4]

The plaintiffs filed this declaratory judgment action in the United States District Court for the Western District of New York on January 30, 2007. They alleged that they were additional insureds under the Primary Policy and therefore were entitled to coverage by Mountain Valley in DelPrince's suit. The plaintiffs further alleged that the COI bound Mountain Valley to provide coverage despite the absence of a signed agreement between EDC and Ellicott Maintenance. Finally, the plaintiffs alleged that Mountain Valley should be precluded from relying on the defense of untimely notice because Mountain Valley's response disclaiming coverage was itself untimely. The plaintiffs later amended their complaint to add a claim alleging entitlement to indemnification and defense as additional insureds under the terms of the Umbrella Policy.

The district court (Richard J. Arcara, <u>Judge</u>[5]) referred the case to Magistrate Judge Leslie G. Foschio. In June 2008, the parties brought cross-motions for summary judgment before the magistrate judge. Mountain Valley's motion principally relied on the same arguments made in its April 2004 letter to the plaintiffs disclaiming coverage. Mountain Valley also argued

---

[4]    The parties represented at oral argument before this Court that DelPrince's suit has been settled.

[5]    This case was originally assigned to Judge Arcara. When, following the reference of the case to the magistrate judge, Judge Arcara recused himself, the case was reassigned to Chief Judge William M. Skretny.

that it was not bound by the Umbrella Policy because (1) the Construction Agreement required that the insurance provided to the plaintiffs be "primary," and the Umbrella Policy was secondary; and (2) the Umbrella Policy was "subject to all the limitations of [the Primary Policy]," including the execution requirement, and that because the Construction Agreement was not executed before DelPrince's injury, the plaintiffs "[we]re not insureds on the underlying insurance [and we]re not insureds" under the Umbrella Policy. Mem. of Law in Supp. of Mountain Valley Indem. Co.'s Mot. for Summ. J. at 20-21, 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co., No. 07-CV-0053 (W.D.N.Y. June 13, 2008); see Umbrella Policy at 7-8. In support of their cross-motion, the plaintiffs contended that even though the Construction Agreement had not been signed on behalf of the parties at the time of the accident, it nonetheless had been "executed" for purposes of the Primary Policy because of the parties' partial performance and because the parties to the contract understood its signing to be ministerial. The plaintiffs further argued that even if the Agreement had not been executed, the COI bound Mountain Valley to provide coverage under the Primary Policy because "Mountain Valley's authorized representative represented that such coverage was in place." Mem. of Law in Supp. of Pls.' Mot. for Summ. J. at 17, 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co., No. 07-CV-0053 (W.D.N.Y. June 13, 2008). Finally, the plaintiffs

12

argued that the Umbrella Policy's own "blanket additional insured provision" entitled them to that policy's coverage.

In a Report and Recommendation (the "R&R"), 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co., No. 07-CV-0053 (W.D.N.Y. Sept. 22, 2009), the magistrate judge recommended denying Mountain Valley's motion for summary judgment and granting the plaintiffs'.[6]  With regard to whether the Construction Agreement was "executed," the magistrate judge concluded that "in light of 'common speech' and the reasonable expectations of a businessperson"--and because Mountain Valley, as the drafter of the policy, could have used the term "signed" if it had intended to require a signature--the term "executed" as used in the Primary Policy should not be interpreted to require the parties' signatures to trigger coverage under that policy. R&R at 12–13.  On the question of whether the plaintiffs were entitled to coverage based on the COI, the magistrate judge recommended finding that the COI incorporated the terms of the Primary and Umbrella Policies.  Relying on Niagara Mohawk Power Corp. v. Skibeck Pipeline Co., 271 A.D.2d 867, 705 N.Y.S.2d 459 (4th Dep't 2000), the magistrate judge found that Mountain Valley's agent, acting within the scope of its authority, "issued the certificate of insurance naming [the plaintiffs] as additional insureds, upon which [the plaintiffs] were entitled to

---

[6]     Subject matter jurisdiction over this action is founded on diversity of citizenship.  The parties do not dispute that the plaintiffs' claims are properly resolved by applying New York law.

13

rely, regardless of the absence of a signing of the construction contract at that time." R&R at 15. The magistrate judge therefore recommended estopping Mountain Valley from denying coverage to the plaintiffs. Finally, the magistrate judge rejected Mountain Valley's argument that the plaintiffs had not provided timely notice of DelPrince's injury.[7]

Mountain Valley filed written objections to the entire R&R making essentially the same arguments it had presented to the magistrate judge. Upon de novo review, the district court adopted the R&R in its entirety and without further written analysis. 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co., No. 07-CV-0053, 2010 WL 681284, 2010 U.S. Dist. LEXIS 14556 (W.D.N.Y. Feb. 19, 2010).

Mountain Valley appeals.

## DISCUSSION

I. Standard of Review

We review the district court's grant of summary judgment de novo, "construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010). "Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." O & G Indus., Inc. v. Nat'l

---

[7] Mountain Valley does not challenge this conclusion on appeal.

14

R.R. Passenger Corp., 537 F.3d 153, 159 (2d Cir. 2008), cert. denied, 129 S. Ct. 2043 (2009) (brackets and internal quotation marks omitted); see also Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.").

II.  Execution of the Construction Agreement

The plaintiffs argue, and the district court concluded, that although no one on behalf of them or Ellicott Maintenance had signed the Construction Agreement before DelPrince was injured, the contract nevertheless was "executed" for purposes of the Primary Policy.  We disagree.

We must give "unambiguous provisions of an insurance contract . . . their plain and ordinary meaning."  Essex Ins. Co. v. Laruccia Constr., Inc., 71 A.D.3d 818, 819, 898 N.Y.S.2d 558, 559 (2d Dep't 2010) (internal quotation marks omitted).  We cannot disregard "the plain meaning of the policy's language . . . in order to find an ambiguity where none exists."[8]

---

[8]     The plaintiffs appear to argue that the term "executed" is ambiguous.  Whether a contract term is ambiguous is a threshold question of law.  Morgan Stanley Grp. Inc. v. New Eng. Ins. Co., 225 F.3d 270, 275 (2d Cir. 2000).  "An ambiguity exists where the terms of an insurance contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person" who is aware of trade terminology and of the context of the entire contract.  Id. (internal quotation marks omitted).  As we will discuss below, we conclude that the term "executed" is not ambiguous.

15

*Empire Fire & Marine Ins. Co. v. Eveready Ins. Co.*, 48 A.D.3d 406, 407, 851 N.Y.S.2d 647, 648 (2d Dep't 2008).

"[I]t is common practice for the courts of this State to refer to the dictionary to determine the plain and ordinary meaning of words to a contract." *Mazzola v. Cnty. of Suffolk*, 143 A.D.2d 734, 735, 533 N.Y.S.2d 297, 297 (2d Dep't 1988) (citation omitted). The New York Court of Appeals recently did just that in determining the meaning of New York State statutory language. *Giordano v. Market Am., Inc.*, --- N.Y.3d ----, ----, --- N.E.2d ----, ----, --- N.Y.S.2d ----, ----, 2010 WL 4642451, 2010 N.Y. LEXIS 3284, at *10 (Nov. 18, 2010) (adopting a dictionary definition of the word "latent" for purposes of N.Y. C.P.L.R. 214-c(4)).

*Black's Law Dictionary* defines "executed" as: "1. (Of a document) that has been signed <an executed will>. 2. That has been done, given, or performed <executed consideration>." *Black's Law Dictionary* 650 (9th ed. 2009).[9] A note to the definition warns that "[t]he term 'executed' is a slippery word. . . . A contract is frequently said to be executed when the document has been signed, or has been signed, sealed, and delivered. Further, by executed contract is frequently meant one that has been fully performed by both parties." *Id.* (quoting William R. Anson, *Principles of the Law of Contract* 26 n.*

---

[9] *Black's Law Dictionary* defines "execute" as, *inter alia*: "To perform or complete (a contract or duty)"; and "To make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form." *Black's Law Dictionary*, *supra*, at 649.

(Arthur L. Corbin ed., 3d Am. ed. 1919)) (brackets and internal quotation marks omitted, emphasis in original).

New York courts employ the standard indicated by the definition in <u>Black's</u>, requiring that a contract be either signed or fully performed before it can be considered executed.[10]  For example, in <u>Burlington Insurance Co. v. Utica First Insurance Co.</u>, 71 A.D.3d 712, 896 N.Y.S.2d 433 (2d Dep't 2010),[11] a case with facts remarkably similar to those of the case before us, a construction manager contracted with a subcontractor to perform work at a site in Manhattan.  The agreement was memorialized in a purchase order that required the subcontractor "to obtain insurance in specified minimum amounts, and to name [the construction manager] as an additional insured on the Certificate of Insurance."  <u>Id.</u> at 712, 896 N.Y.S.2d at 434.  The policy's additional insured endorsement provided, <u>inter alia</u>, that the written contract or agreement between the manager and

---

[10]    The parties have not pointed to, nor have we ourselves discovered, an opinion of the New York Court of Appeals addressing the definition of "executed" as it relates to contracts.  Because there is no disagreement among the Departments of the Appellate Division in this regard, however, we will apply the decisions of those courts.  "[W]e are bound to apply the law as interpreted by New York's intermediate appellate courts unless we find persuasive evidence that the New York Court of Appeals, which has not ruled on this issue, would reach a different conclusion."  <u>Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.</u>, 344 F.3d 211, 221 (2d Cir. 2003) (ellipses and internal quotation marks omitted).

[11]    The district court relied on the Supreme Court's opinion in <u>Burlington</u>, which the Second Department overturned, in determining applicable New York law.  We of course treat the Second Department's decision, of which the district court could not have known when it decided the case at bar, as superseding the Supreme Court's view on the matter.

subcontractor had to be "[c]urrently in effect or becoming effective during the terms of this policy; and . . . [e]xecuted prior to the 'bodily injury' [or] 'personal injury'." Id. at 713, 896 N.Y.S.2d at 434.

Before the purchase order was signed on behalf of either party, and before work at the site was completed, a man was injured when he fell through a sidewalk cellar door at the construction site. Id. The injured man filed a personal injury action against the construction manager and the subcontractor, both of whom in turn sought coverage from the defendant insurance company. Id. The defendant declined coverage "on the ground that [the construction manager] was not an additional insured pursuant to the terms of the policy's additional insured endorsement" because "the purchase order was not signed at the time of the underlying plaintiff's alleged injury and, therefore, had not been 'executed' as of that time," as required by the endorsement. Id. The plaintiffs argued that the contract had been executed by virtue of their partial performance of their duties thereunder.

The Appellate Division, Second Department, agreed with the insurer, concluding that "the defendant demonstrated that the contract was not 'executed' at the time of the alleged accident . . . since it was both unsigned and had not been fully performed at that time." Id. at 714, 896 N.Y.S.2d at 435. The court found "no support for the plaintiffs' contention that the condition in the additional insured endorsement that the contract

18

be 'executed' prior to the bodily injury or personal injury could be satisfied by partial performance." Id.

In this case, the plaintiffs assert that although the Construction Agreement was not signed, the "underlying contract" requiring Ellicott Maintenance to procure insurance had been fully performed in that Ellicott Maintenance had "obtained insurance in favor of EDC/5182 Group by purchasing policies with a blanket additional insured endorsement," and "delivered proof of coverage in the form of" the COI. Appellees' Br. 20. But the Construction Agreement was not comprised of many individual contracts, as the plaintiffs' argument implies. Rather, fulfilling the insurance procurement provision constituted partial performance of the Construction Agreement--satisfaction of one of the duties required of Ellicott Maintenance thereunder. And as the district court correctly noted, partial performance does not constitute execution.

The plaintiffs also argue that Burlington "appears to be premised on a legal fallacy," Appellees' Br. 14, i.e., that the Second Department's acknowledgment that the word "executed" can have more than one meaning cannot be reconciled with its conclusion that this "does not render the contract uncertain or ambiguous," Burlington, 71 A.D.3d at 713, 896 N.Y.S.2d at 435 (internal quotation marks omitted). But the Burlington court concluded that the contract before it had not been executed because it had neither been signed nor fully performed. Therefore, neither method of execution had been met. Id. at 714,

19

896 N.Y.S.2d at 435. One cannot conclude from the fact that a contract requirement can be satisfied in more than one way that the contract for that reason alone "lack[s] a definite and precise meaning." SUS, Inc. v. St. Paul Travelers Grp., 75 A.D.3d 740, 742, 905 N.Y.S.2d 321, 324 (3d Dep't 2010). Neither does it render the term ambiguous, nor create a triable issue of material fact.

Because New York law unambiguously requires either the signing of a contract or its full performance for it to be "executed" within the meaning of an insurance policy requiring such prior execution, and because neither occurred here, the Construction Agreement was not executed as of the date of DelPrince's injury. The district court's finding that it was and its conclusion that for that reason the Primary Policy was in effect at the time of the accident, are therefore in error.

III. Estoppel under the Certificate of Insurance

The plaintiffs contend that Mountain Valley is nonetheless estopped from denying coverage to the plaintiffs under the Primary Policy[12] because Mountain Valley's agent issued, and the plaintiffs relied upon, the COI. The district court agreed. New York's intermediate appellate courts are divided on the question.

---

[12]    The plaintiffs make the same argument regarding the Umbrella Policy, but because we conclude in Part IV below that the Umbrella Policy was in any event in effect as to the plaintiffs for other reasons, we need not reach the question of estoppel with respect to that policy.

20

New York contract law instructs that, as a general matter, "[a] certificate of insurance is merely evidence of a contract for insurance, not conclusive proof that the contract exists, and not, in and of itself, a contract to insure." Horn Maint. Corp. v. Aetna Cas. & Sur. Co., 225 A.D.2d 443, 444, 639 N.Y.S.2d 355, 356 (1st Dep't 1996); see also Sevenson Envtl. Servs., Inc. v. Sirius Am. Ins. Co., 74 A.D.3d 1751, 1753, 902 N.Y.S.2d 279, 280 (4th Dep't 2010); Tribeca Broadway Assocs., LLC v. Mount Vernon Fire Ins. Co., 5 A.D.3d 198, 200, 774 N.Y.S.2d 11, 13 (1st Dep't 2004). While a certificate "may be sufficient to raise an issue of fact" on summary judgment, "it is not sufficient, standing alone . . . , to prove coverage as a matter of law." Id.

However, the Third and Fourth Departments have held that a certificate of insurance can estop an insurance provider from denying coverage where the parties intended to provide coverage to the party seeking it if the certificate was issued by an agent within the scope of its authority, and if the party seeking coverage reasonably relied on the certificate of insurance by, for example, beginning construction work. See Niagara Mohawk Power Corp. v. Skibeck Pipeline Co., 270 A.D.2d 867, 868-69, 705 N.Y.S.2d 459, 460-61 (4th Dep't 2000) (concluding that insurer was bound by certificate of insurance listing the plaintiff as an additional insured, even though another certificate, under which the plaintiff sought coverage, did not list the plaintiff); Bucon, Inc. v. Pa. Mfg. Ass'n Ins.

21

Co., 151 A.D.2d 207, 210-11, 547 N.Y.S.2d 925, 927-28 (3d Dep't 1989) (estopping the defendant insurer from denying coverage to the plaintiff where the plaintiff reasonably relied on a certificate of insurance in commencing construction work). But the Second Department has declined to conclude that an insurer was estopped from denying coverage to a party that was erroneously named on a certificate of insurance. See Am. Ref-Fuel Co. of Hempstead v. Res. Recycling, Inc., 248 A.D.2d 420, 423-24, 671 N.Y.S.2d 93, 96 (2d Dep't 1998) (rejecting estoppel arising from a certificate of insurance where the certificate stated that it was "a matter of information only and confer[red] no rights upon" the plaintiff, and holding that "the doctrine of estoppel may not be invoked to create coverage where none exists under the policy").[13] The First Department, too, has been reluctant to find estoppel based on a certificate of insurance. See Nicotra Grp., LLC v. Am. Safety Indem. Co., 48 A.D.3d 253, 254, 850 N.Y.S.2d 455, 457 (1st Dep't 2008) ("Nor did the

---

[13] The plaintiffs attempt to distinguish American Ref-Fuel. In that case, the alleged additional insured was named in the certificate of insurance but was never named--and was not intended to be named--as an additional insured under the terms of the insurance contract. Id., 248 A.D.2d at 423-24, 671 N.Y.S.2d at 96. However, the court's rejection of estoppel appears to have been grounded in the plain language of the certificate itself, which, like the certificate at issue in the instant case, warned that it was for informational purposes only. Id. Mountain Valley's effort to distinguish Bucon is similarly unpersuasive, as is its reliance on Taylor v. Kinsella, 742 F.2d 709 (2d Cir. 1984), a case in which we declined to require coverage by virtue of a certificate because, inter alia, in order to provide the coverage sought, the certificate would have had to expand the scope of the policy it referenced. See id. at 711-12.

22

certificate of insurance confer additional insured status."); Rodless Props., L.P. v. Westchester Fire Ins. Co., 40 A.D.3d 253, 254-55, 835 N.Y.S.2d 154, 155 (1st Dep't 2007) ("We agree . . . that since the certificate of insurance was issued as a matter of information only . . . it is neither proof of insurance nor proof of an oral contract."); Moleon v. Kreisler Borg Florman Gen. Constr. Co., 304 A.D.2d 337, 339, 758 N.Y.S.2d 621, 623 (1st Dep't 2003) (deciding, without reference to estoppel, that certificate of insurance is "insufficient to establish that [the plaintiff] is an additional insured under a policy especially where, as here, the policy itself makes no provision for coverage").

There is reason to conclude that the primary insured--here, Ellicott Maintenance--should bear the burden of ensuring that all the conditions of providing "additional insured" status to those with whom it contracts to provide that status have been met. At oral argument, counsel for both sides acknowledged that it is not customary for an insurer or for the insurer's agent to see the contract ostensibly requiring a contractor to procure insurance; rather, a certificate of insurance naming the additional insured is issued as a matter of course upon the request of the primary insured. Nor is there evidence in the record of which we are aware that the plaintiffs ever saw the policy issued to Ellicott Maintenance, or that a party in the plaintiffs' position would typically see such a policy. The additional insureds did not have a relationship with the insurer

23

that would have given them the right to obtain or question the accuracy of a certificate of insurance. It is, after all, the primary insured which has explicitly agreed to the execution of the underlying contract as a condition of coverage for additional insureds, which has the ability to seek to obtain that execution prior to the beginning of work pursuant to the contract, and which is otherwise best positioned to assure compliance with the conditions of its insurance.

On the other hand, there is a reasonable argument to be made that, disclaimers notwithstanding, an insurer has an obligation not to issue false or potentially misleading certificates of insurance--or to permit an agent to issue them-- if it or the agent is aware the parties may rely upon the certificate despite disclaimers to the contrary. "[A]n estoppel rests upon the word or deed of one [party] upon which another party rightfully relies and so relying changes his position to his injury." Nassau Trust Co. v. Montrose Concrete Prods. Corp., 56 N.Y.2d 175, 184, 436 N.E.2d 1265, 1269, 451 N.Y.S.2d 663, 667 (1982) (citation and internal quotation marks omitted). That formulation may well correctly describe the facts here. Moreover, insurers typically have greater control over the terms of insurance contracts and certificates of insurance than their insureds, along with greater knowledge of the applicable law; estoppel therefore may be appropriate for much the same reason that ambiguities in insurance contracts are construed against insurers. Cf. Thomas J. Lipton, Inc. v. Liberty Mut.

24

Ins. Co., 34 N.Y.2d 356, 361, 314 N.E.2d 37, 39, 357 N.Y.S.2d 705, 708 (1974). And such a distribution of responsibility may be particularly appropriate in cases, such as this one, where enforcement of the certificate of insurance would not expand the substantive scope of the insurance contemplated by the insurer, but would instead require the insurer to provide the coverage to which the certificate of insurance states it has agreed. See Bucon, 151 A.D.2d at 210-11, 547 N.Y.S.2d at 927-28.

In any event, in light of this diversity of authority among the Appellate Divisions, and of the underlying policy choices involved, on what we think to be a significant issue of state law, and acknowledging the absence of guidance from the Court of Appeals, we respectfully certify to the Court the following question:

> In a case brought against an insurer in which a plaintiff seeks a declaration that it is covered under an insurance policy issued by that insurer, does a certificate of insurance by an agent of the insurer that states that the policy is in force but also bears language that the certificate is not evidence of coverage, is for informational purposes only, or other similar disclaimers, estop the insurer from denying coverage under the policy?

IV. Coverage Under the Umbrella Policy[14]

---

[14] In a joint post-argument submission dated October 14, 2010, the parties confirmed that even though DelPrince's lawsuit has been settled, their dispute concerning the applicability of the Umbrella Policy is not moot because, "given the particulars of the settlement in the underlying action, a finding in this case that [the] plaintiffs are entitled to coverage under the defendant's umbrella policy would result in [the] defendant having to pay under that policy." Letter from Judith Treger Shelton, Counsel for the Pls., to the U.S. Court of Appeals for

25

The plaintiffs argue that even if they are not covered as additional insureds under the Primary Policy, they are covered under the Umbrella Policy.[15] Mountain Valley responds that the Umbrella Policy is limited by the same unfulfilled "execution" requirement as the Primary Policy. A finding that the plaintiffs were covered by the Umbrella Policy, Mountain Valley asserts, would constitute an expansion in coverage in contravention of New York law. We agree with the plaintiffs.

Section 3(c) of the Umbrella Policy provides: "Any person or organization with whom or with which you have agreed in writing prior to any loss, 'occurrence[,]' or 'offense' to provide insurance such as is afforded by this policy is an insured . . . ." Fijal Decl. Ex. K at 8 (§ 3(c)). Pursuant to Section 3(d), "Each person or organization who is an 'insured' in the 'underlying insurance' is an 'insured' under this insurance subject to all the limitations of such 'underlying insurance' other than the limits of the underlying insurer's liability." Id. (§ 3(d)).

---

the Second Circuit, dated Oct. 14, 2010, 10 Ellicott Square Court Corp. v. Mountain Valley Indem. Co., No. 10-0799-CV (2d Cir. Oct. 14, 2010), ECF No. 71.

[15] The district court's finding that the Construction Agreement had been "executed" compelled its conclusion that the plaintiffs were covered under both the Primary and the Umbrella Policies. See 10 Ellicott Square Court Corp., 2010 WL 681284, at *2, 2010 U.S. Dist. LEXIS 14556, at *5. Because we conclude that the Construction Agreement was not "executed," we must consider whether the plaintiffs qualify for defense and indemnification under the Umbrella Policy.

26

We conclude that Section 3(c) renders the plaintiffs insureds under the Umbrella Policy. The policy requires no more than an agreement in writing. The New York Court of Appeals "ha[s] long held that a contract may be valid even if it is not signed by the party to be charged, provided its subject matter does not implicate a statute . . . that imposes such a requirement." Flores v. Lower E. Side Serv. Ctr., Inc., 4 N.Y.3d 363, 368, 828 N.E.2d 593, 596 (2005). "[A]n unsigned contract may be enforceable, provided there is objective evidence establishing that the parties intended to be bound." Id. at 369, 828 N.E.2d at 597.

It is undisputed that the parties intended to be bound by the Construction Agreement irrespective of whether and when it was signed. Under New York law, it was therefore a binding agreement prior to its execution. And it is indisputable that under that agreement, the general contractor was to procure insurance for the plaintiffs. Nor is there any issue as to the Construction Agreement's requirement that Ellicott Maintenance obtain aggregate insurance coverage for at least five million dollars, and that the Primary Policy had a general aggregate limit of two million dollars.

Mountain Valley argues that the Construction Agreement did not require "insurance such as is afforded" by the Umbrella Policy because the Agreement required that Ellicott Maintenance's insurance be in the form of a "primary policy." But the Agreement required only that Ellicott Maintenance's policy be

27

primary in relation to the plaintiffs' own policies "rather than concurrent" with them. Fijal Decl. Ex. G at 10 (§ 7(A)(3)).

Mountain Valley also contends that because the Construction Agreement did not refer explicitly to umbrella coverage, it did not require Ellicott Maintenance to provide "such insurance as is afforded" by the Umbrella Policy. Appellant's Reply. Br. at 11. We find no language in the Umbrella Policy to require such specificity.

Notwithstanding Section 3(c), Mountain Valley argues that the plaintiffs do not qualify as additional insureds because, under Section 3(d), the Umbrella Policy is "subject to all the limitations" of the Primary Policy. We need not resolve whether the Primary Policy's execution requirement would preclude the plaintiffs from receiving coverage under Section 3(d) of the Umbrella Policy, because the plaintiffs are eligible for coverage pursuant to Section 3(c) irrespective of the effectiveness of the Primary Policy. Sections 3(c) and 3(d) of the Umbrella Policy, which define who is an insured, provide alternative grounds rather than compound requirements for qualification as an additional insured. We will not read "and" into the policy to conclude that the plaintiffs must qualify as insureds under both Section 3(c) and Section 3(d). If they come within the terms of either, they are insureds. "[C]ourts may not by construction add or excise terms . . . under the guise of interpreting the writing." Vt. Teddy Bear Co. v. 538 Madison Realty Co., 1 N.Y.3d 470, 475, 807 N.E.2d 876, 879, 775 N.Y.S.2d 765, 768 (2004)

(citation and internal quotation marks omitted). We therefore conclude that Mountain Valley is bound to provide coverage to the plaintiffs under Section 3(c) of the Umbrella Policy.

Although our conclusion rests on a ground not considered by the district court, we may "affirm a decision on any grounds supported in the record, even if it is not one on which the trial court relied." Thyroff v. Nationwide Mut. Ins. Co., 460 F.3d 400, 405 (2d Cir. 2006). We do so here.

V. Certification to the New York Court of Appeals

The rules of this Court provide that "[i]f state law permits, the court may certify a question of state law to that state's highest court." 2d Cir. Local R. 27.2; see also Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 41-42 (2d Cir. 2010). "Although the parties did not request certification, we are empowered to seek certification nostra sponte." Kuhne v. Cohen & Slamowitz, LLP, 579 F.3d 189, 198 (2d Cir. 2009). Whether to certify is discretionary, Am. Buddha, 609 F.3d at 41, and is principally guided by three factors.

First, "certification may be appropriate if the New York Court of Appeals has not squarely addressed an issue and other decisions by New York courts are insufficient to predict how the Court of Appeals would resolve it." Id. at 42; see also O'Mara v. Town of Wappinger, 485 F.3d 693, 698 (2d Cir. 2007); Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc., 344 F.3d 211, 220-21 (2d Cir. 2003); N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a) (2008). As discussed above, there is a

29

"split of authority," Blue Cross, 344 F.3d at 221, regarding whether a certificate of insurance can be enforced through estoppel: "[T]wo competing lines of cases deal[] with the issue here," and the New York Court of Appeals has not decided which is correct. Am. Buddha, 609 F.3d at 42. In the absence of direction from the state's highest court, we "cannot harmonize" the divergent intermediate court decisions. Carney v. Philippone, 332 F.3d 163, 172 (2d Cir. 2003). Nor can we predict any better than the Departments of the Appellate Division how the Court of Appeals would resolve the question.

Second, the question on which we certify must be of "importance . . . to the state," O'Mara, 485 F.3d at 698, and its resolution must "require[] value judgments and important public policy choices that the New York Court of Appeals is better situated than we to make," Am. Buddha, 609 F.3d at 42; accord Bessemer Trust Co. v. Branin, 618 F.3d 76, 93 (2d Cir. 2010). We think that the New York Court of Appeals is better positioned than we to weigh who should properly bear the burden under New York law of confirming that coverage exists before issuing a certificate of insurance that purports to evidence such coverage.

Third, we may certify if the question is "'determinative' of a claim before us." O'Mara, 485 F.3d at 698 (quoting N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27(a)); see also Prats v. Port Auth. of N.Y. & N.J., 315 F.3d 146, 150–51 (2d Cir. 2002) (certifying "unsettled" question of state law). Here,

30

whether the plaintiffs receive coverage under the Primary Policy, and therefore the extent to which the plaintiffs will be indemnified for their defense in DelPrince's action, rests on resolution of the certified question.

We therefore certify a question to the New York Court of Appeals and reserve decision on this point pending that Court's action.

**CONCLUSION**

For the foregoing reasons, we certify the following question to the New York Court of Appeals:

> In a case brought against an insurer in which a plaintiff seeks a declaration that it is covered under an insurance policy issued by that insurer, does a certificate of insurance issued by an agent of the insurer that states that the policy is in force but also bears language that the certificate is not evidence of coverage, is for informational purposes only, or other similar disclaimers, estop the insurer from denying coverage under the policy?

As is our practice, we do not intend to limit the scope of the Court of Appeals' analysis through the formulation of our question, and we invite the Court of Appeals to expand upon or alter this question as it should deem appropriate. See Am. Buddha, 609 F.3d at 42–43; Kirschner v. KPMG LLP, 590 F.3d 186, 195 (2d Cir. 2009).

Pursuant to New York Court of Appeals Rule 500.17 and United States Court of Appeals for the Second Circuit Rule 27.2, it is hereby ORDERED that the Clerk of this Court transmit to the Clerk of the Court of Appeals of New York this opinion as our

31

certificate, together with a complete set of the briefs, appendix, and record filed in this Court by the parties.  We direct the parties to bear equally any fees and costs that may be imposed by the New York Court of Appeals in connection with this certification.  This panel will retain jurisdiction over the appeal after disposition of this certification by the New York Court of Appeals.

We affirm the district court's grant of summary judgment to the plaintiffs with respect to coverage under the Umbrella Policy.  We reserve decision as to the district court's grant of summary judgment to the plaintiffs with respect to coverage under the Primary Policy pending the New York Court of Appeals' decision as to whether to answer the question we certify, and if it decides to do so, until its judgment in the matter is final.