[828 NE2d 593, 795 NYS2d 491]

Moses Flores, Plaintiff, v The Lower East Side Service Center, Inc., Defendant and Third-Party Plaintiff-Appellant. Procida Realty and Construction Corp., Third-Party Defendant-Respondent.

Argued February 16, 2005; decided March 29, 2005

### POINTS OF COUNSEL

*Mauro Goldberg & Lilling LLP,* Great Neck (*Kenneth Mauro* and *Jennifer B. Ettenger* of counsel), and *Kral, Clerkin, Redmond, Ryan, Perry & Girvan,* New York City, for defendant and third-party plaintiff-appellant. Workers' Compensation Law § 11 does not require the existence of a "signed" contract for the purposes of contractual indemnification. (*Crawford v Merrill Lynch, Pierce, Fenner & Smith,* 35 NY2d 291; *Matter of Helen Whiting, Inc. [Trojan Textile Corp.],* 307 NY 360; *Metropolitan Arts & Antiques Pavilion v Rogers Marvel Architects,* 287 AD2d 372; *Rudolph & Beer v Roberts,* 260 AD2d 274; *Atlas Drywall Corp. v District Council of N.Y. City & Vicinity of United Bhd. of Carpenters & Joiners of Am., Carpenters Local Union 531,* 207 AD2d 762; *Liberty Mgt. & Constr. v Fifth Ave. & Sixty-Sixth St. Corp.,* 208 AD2d 73; *Matter of Caldwell v Alliance Consulting Group,* 6 AD3d 761; *Matter of Orens v Novello,* 99 NY2d 180; *Rosner v Metropolitan Prop. & Liab. Ins. Co.,* 96 NY2d 475; *Brown Bros. Elec. Contrs. v Beam Constr. Corp.,* 41 NY2d 397.)

*Abrams, Gorelick, Friedman & Jacobson, P.C.,* New York City (*Steven DiSiervi* of counsel), for third-party defendant-respondent. I. The indemnity provision contained in the purported contract is unenforceable under Workers' Compensa-

tion Law § 11, where there was no evidence that the employer had entered into a written contract prior to the accident or had expressly agreed to indemnify appellant. (*Rubeis v Aqua Club, Inc.*, 3 NY3d 408; *Burke v Fisher Sixth Ave. Co.*, 287 AD2d 410; *Beckford v City of New York*, 261 AD2d 158; *Zuckerman v City of New York*, 49 NY2d 557; *Meis v ELO Org.*, 97 NY2d 714; *Castro v United Container Mach. Group*, 96 NY2d 398; *Ferri v 63 Madison Assoc.*, 280 AD2d 419; *Thompson v Janowitz Constr.*, 301 AD2d 588; *Guijarro v V.R.H. Constr. Corp.*, 290 AD2d 485; *Billy v Consolidated Mach. Tool Corp.*, 51 NY2d 152.) II. The intent of the Legislature in modifying Workers' Compensation Law § 11 supports the decisions of the lower courts. (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577; *Patrolmen's Benevolent Assn. v City of New York*, 41 NY2d 205; *Mowczan v Bacon*, 92 NY2d 281; *Dole v Dow Chem. Co.*, 30 NY2d 143; *Castro v United Container Mach. Group*, 96 NY2d 398; *Rubeis v Aqua Club, Inc.*, 3 NY3d 408.) III. The contractual indemnification claim was properly dismissed as appellant did not comply with a condition precedent to litigation. (*Garofalo Elec. Co. v New York Univ.*, 270 AD2d 76; *Silva v Incorporated Vil. of Hempstead Community Dev. Agency*, 292 AD2d 370.) IV. Appellant failed to meet its burden of establishing its entitlement to summary judgment on the contractual indemnification claim as it offered no evidence that Procida Realty and Construction Corp. was negligent. (*Zuckerman v City of New York*, 49 NY2d 557.)

### OPINION OF THE COURT

Graffeo, J.

Workers' Compensation Law § 11 permits an owner to bring a third-party claim against an injured worker's employer in only two circumstances: where the injured worker has suffered a "grave injury" or the employer has entered into a written contract to indemnify the owner. The issue in this case is whether the "written contract" provision in section 11 requires a signed agreement.

Defendant and third-party plaintiff Lower East Side Service Center (LES) is the owner of a multi-story building in Manhattan that was undergoing rehabilitation. Initially, LES hired third-party defendant Procida Realty and Construction Corp. to act as its on-site representative, having retained another firm to function as general contractor on the project. Following a dispute between LES and the other firm, Procida agreed to assume the role of general contractor.

In March 2000, LES sent Procida a written contract including a provision for Procida to indemnify LES for injuries "arising out of or resulting from performance of the Work" on the $3 million project. In accordance with the terms of the agreement, Procida purchased liability insurance and obtained payment and performance bonds. In a June 23, 2000 memorandum entitled "Attachment 4-Scope Clarifications" and forwarded to LES, a Procida representative acknowledged the existence of an agreement, clarifying that under "this contract" Procida assumed no responsibility for work performed by the previous general contractor. For reasons undisclosed in the record, Procida did not sign the March 2000 contract or the June 2000 addendum, but it performed the work specified in the contract and was paid in conformity with the documents.

In September 2000, plaintiff Moses Flores, a laborer employed by Procida, sustained an eye injury while performing demolition work on the project. In addition to obtaining workers' compensation benefits, Flores commenced this personal injury action against LES as owner of the building. LES filed a third-party action against Procida asserting, in addition to common-law claims, that Procida was obligated to indemnify LES for Flores' injuries pursuant to the indemnification clause in the March 2000 contract. In its answer to the third-party complaint, Procida "admit[ted] the existence of an agreement between the parties," reserving the right to refer to the provisions of the "written agreement, if any."

Following the completion of discovery and the filing of a note of issue, LES moved for summary judgment on its third-party complaint and Procida cross-moved for summary judgment dismissing LES's claims. Although it acknowledged the existence of a contract in its answer, Procida asserted that there was no binding indemnification agreement with LES. Procida relied on the fact that the March 2000 contract was never signed, arguing that LES was precluded from seeking contractual indemnification because Workers' Compensation Law § 11 authorizes such a claim only when there is an executed document. LES countered that, notwithstanding the failure to sign the agreement, Procida's course of conduct demonstrated that it had assented to the terms of the contract months before Flores was injured. Noting that section 11 does not expressly state that an indemnification agreement must be signed, LES contended that the statute authorized enforcement of any "written contract" that was entered into prior to the date of injury.

Supreme Court denied LES's motion and granted Procida's cross motion to dismiss the third-party complaint. After disposing of the common-law claims, Supreme Court reasoned that the contractual indemnification clause in the written agreement was unenforceable under Workers' Compensation Law § 11 because Procida did not sign the document. On appeal, the Appellate Division affirmed, concluding that a contract that was never executed was not "entered into" within the meaning of the statute. This Court granted LES leave to appeal and we now reverse, reinstate the contractual indemnification claim and grant summary judgment to LES.

## I.

Workers' Compensation Law § 11, as amended by the Omnibus Workers' Compensation Reform Act of 1996 (L 1996, ch 635, § 2), prohibits most third-party claims for contribution or indemnification against an employer for injuries sustained by an employee acting within the scope of employment. But the statute sets forth two exceptions: the employer may be impleaded when the employee has sustained a "grave injury" or when there is a "written contract entered into prior to the accident or occurrence by which the employer had expressly agreed to contribution to or indemnification of the claimant" (Workers' Compensation Law § 11).

In our prior cases construing section 11, this Court has "attempt[ed] to effectuate the intent of the Legislature" (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998] [citations omitted]). "As the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (*id.*). In this regard, we have declined to second-guess the policy choices made by the Legislature, adhering to the literal terms of the statute. Thus, in *Castro v United Container Mach. Group* (96 NY2d 398 [2001]) and *Meis v ELO Org.* (97 NY2d 714 [2002]), this Court strictly interpreted the "grave injury" designations specified by the Legislature.

We have had several opportunities to interpret the grave injury exception, but this is the first case requiring us to address the contractual indemnification exception to the prohibition against third-party claims. As previously observed, although the Legislature clearly intended to restrict claims against employers when it adopted the "grave injury" standard, it chose

not to abrogate "the power of a third party to recover under express contractual obligations between the employer and the third party" (*Majewski*, 91 NY2d at 582). Instead, the Legislature preserved the right of parties to enter into binding contractual indemnification agreements. Procida maintains that a contract is only "entered into" within the meaning of section 11 when it is actually signed. In the absence of statutory language indicating that the written indemnification agreement must be executed, LES relies on the common-law rule that a contract need not be signed to be enforceable. Because the Legislature did not express a clear intent to deviate from the common law, we agree with LES.

We have long held that a contract may be valid even if it is not signed by the party to be charged, provided its subject matter does not implicate a statute—such as the statute of frauds (General Obligations Law § 5-701)—that imposes such a requirement. In *Brown Bros. Elec. Contrs. v Beam Constr. Corp.* (41 NY2d 397 [1977]), a landowner entered into a written agreement with a general contractor for the construction of a shopping plaza. The general contractor in turn contracted with Brown, a subcontractor, for electrical work. When the general contractor failed to pay Brown, the owner requested that Brown complete the work, which Brown did. When Brown submitted its bill for services to the owner, the owner refused to pay on the basis that it had never executed a written contract with Brown. After trial, the lower courts found that there was an enforceable agreement, and this Court agreed that "the course of conduct between [the owner] and Brown, including their writings . . . was sufficient to spell out a binding contract," notwithstanding the failure of the parties to sign an integrated agreement (*Brown*, 41 NY2d at 399). We concluded that the absence of an executed document did not end the inquiry, stating:

> "In determining whether the parties entered into a contractual agreement and what were its terms, it is necessary to look . . . to the objective manifestations of the intent of the parties as gathered by their expressed words and deeds . . .
>
> "And, while it is the responsibility of the court to interpret written instruments . . . , where a finding of whether an intent to contract is dependent as well on other evidence from which differing infer-

ences may be drawn, a question of fact arises" (*Brown*, 41 NY2d at 399-400 [citations and internal quotation marks omitted]).

Thus, under the analysis in *Brown*, an unsigned contract may be enforceable, provided there is objective evidence establishing that the parties intended to be bound (*see also Matter of Municipal Consultants & Publs. v Town of Ramapo*, 47 NY2d 144 [1979] [publishing contract was enforceable even though it was never signed by a representative of the town]).

■ When it enacted Workers' Compensation Law § 11, the Legislature clearly intended to limit the number of indemnification claims against employers by requiring that indemnification agreements be memorialized in a "written contract." But nothing in the language of the statute or its legislative history provides a basis for us to conclude that, in addition to requiring a written indemnification clause, the Legislature intended to deviate from the common-law rule that written documents can be enforced even if they are not signed. Had the Legislature intended to alter this rule in the context of indemnification claims, it could easily have done so by including the word "signed" or "subscribed" prior to the phrase "written contract" in section 11. Given the many statutes that include language mandating that one or both parties to an agreement sign the document, it is evident that the Legislature knows how to impose such a limitation when it intends to do so.[1] In some instances, the Legislature has gone beyond requiring that agreements be signed by directing that they be executed with a particular level of formality, such as the requirement that separation agreements that serve as the basis of a divorce be memorialized in "a written agreement . . . subscribed by the parties thereto and acknowledged or proved in the form required to entitle a deed to be recorded" (Domestic Relations Law § 170 [6]). No similar language appears in section 11.

Under these circumstances, we cannot presume that the Legislature meant to impose a restriction it failed to include in the statute. We therefore hold that the common-law rule—which

---

1. General Obligations Law § 5-701 (a), the statute of frauds, specifies that certain types of agreements—including those conveying interests in real property—are void "unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith." As another example, General Business Law § 454 (2), governing the sale of headstones and other monuments, similarly requires that each sale "be evidenced by a written contract which shall be signed by all the parties to the contract."

authorizes review of the course of conduct between the parties to determine whether there was a meeting of minds sufficient to give rise to an enforceable contract—governs the validity of a written indemnification agreement under Workers' Compensation Law § 11.

This interpretation of section 11 is consistent with our decisions analyzing comparable language in CPLR 7501, a statute that confers jurisdiction on courts to enforce arbitration awards only if the parties have a "written agreement" to arbitrate. In the arbitration arena, we have determined that the statutory requirement is met even when the parties never signed a contract expressly agreeing to arbitrate, as long as it is evident from the totality of circumstances that the parties intended to be bound by documents containing arbitration obligations (*see Matter of Helen Whiting, Inc. [Trojan Textile Corp.]*, 307 NY 360 [1954] [interpreting predecessor to CPLR 7501, which required that a contract to arbitrate future disputes must be "in writing"]; *see also Crawford v Merrill Lynch, Pierce, Fenner & Smith*, 35 NY2d 291 [1974] [although there was no integrated contract containing arbitration agreement, documentary proof established that each party was bound to arbitrate dispute]). Of course, arbitration implicates different public policy concerns than third-party claims against employers—public policy favors arbitration while the Legislature sought to reduce the liability of employers under section 11. But we are unpersuaded that this difference provides a reasoned basis for this Court to interpret the term "written contract" to impose a signature requirement when the term "written agreement" does not. In this case, like our prior cases interpreting section 11, our role is to apply the statute as written—not to embellish or expand upon the language selected by the Legislature.

## II.

As the fact-dependent nature of the *Brown* rule suggests, in many instances the issue of whether or when an indemnification agreement came into being in the absence of a signed document will present a question of fact to be resolved by the trier of fact. Based on the record presented in this case, however, LES is entitled to summary judgment on the contractual indemnification claim because Procida failed to come forward with evidence to present a triable dispute concerning the existence of an enforceable written contract.

In its answer, Procida conceded that it had entered into an agreement with LES. When it cross-moved for summary judg-

ment, Procida argued only that the written contract it received from LES was not enforceable because the contract had not been signed. Notably absent from the affidavit of Procida's corporate secretary was any assertion that there had not been a meeting of the minds between LES and Procida concerning the terms of the agreement, nor did Procida claim that it had declined to sign the contract because the parties were engaged in ongoing negotiations.

To the contrary, Procida admitted that it had become the general contractor on the project and the record shows that it acted in conformity with contractual requirements. In June 2000, Procida forwarded the "Attachment 4" memorandum clarifying certain terms of the parties' agreement. During the same time frame, Procida obtained a commercial general liability insurance policy naming LES as an additional insured and purchased a performance bond and labor and material bond in the precise amount specified in paragraphs 4.1 (Standard Form of Agreement Between Owner and Contractor) and 11.4 (General Conditions of the Contract for Construction) of the March 2000 document. The bonds, secured more than two months before the Flores accident, reference a written agreement between Procida and the owner of the construction project (LES), providing a contract date of March 20, 2000—the same date that appears on the front page of the contract containing the indemnification clause.[2] Finally, Procida performed the required work as specified in the written document and accepted payment according to its terms. Under these circumstances, Procida failed to raise a question of fact on the issue of whether it had "entered into" a "written [indemnification] contract . . . prior to the accident" (Workers' Compensation Law § 11), which did not occur until September 2000. LES was therefore entitled to summary judgment on the contractual indemnification claim.

As an alternative ground for affirmance, Procida asks this Court to dismiss the indemnification claim due to LES's alleged failure to comply with an arbitration clause in the contract. This we decline to do. Assuming the provision applied to this type of dispute, Procida did not timely assert an arbitration claim either by raising it as a defense in its answer or by moving to compel arbitration (see CPLR 7503), electing instead to fully participate in this litigation for more than 16 months

---

**2.** The copies of the performance bond and the material payment bond that appear in the record also do not bear any signatures on behalf of Procida.

through discovery and the filing of a note of issue. "These acts were clearly inconsistent with [its] later claim that the parties were obligated to settle their differences by arbitration" (*Matter of Zimmerman [Cohen]*, 236 NY 15, 19 [1923]; *see Sherrill v Grayco Bldrs.*, 64 NY2d 261, 272 [1985]; *De Sapio v Kohlmeyer*, 35 NY2d 402, 406 [1974]).

Accordingly, the order of the Appellate Division should be reversed, with costs, the third-party defendant's cross motion for summary judgment should be denied, the third-party plaintiff's motion for summary judgment on its cause of action for contractual indemnification should be granted and the case remitted to Supreme Court for further proceedings in accordance with this opinion.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT, READ and R.S. SMITH concur.

Order reversed, etc.