■ WILLIAM P. BUSH, Respondent, v MECHANICVILLE WARE-HOUSE CORPORATION, Defendant and Third-Party Plaintiff-Respondent. YANKEE ONE DOLLAR STORES, INC., Third-Party Defendant-Appellant. [912 NYS2d 768]—

Peters, J. Appeal from an order of the Supreme Court (Williams, J.), entered October 21, 2009 in Saratoga County, which denied third-party defendant's motions for summary judgment dismissing the third-party complaint.

The underlying facts are more fully set forth in a prior appeal in this matter (*Bush v Mechanicville Warehouse Corp.*, 69 AD3d 1207 [2010]). Briefly stated, on March 4, 2005, plaintiff sustained severe injuries during the course of his employment when he fell from a ladder in a warehouse owned by defendant. He thereafter commenced this action alleging negligence and violations of Labor Law § 200, among other things. Defendant brought a third-party action against plaintiff's employer, Yankee One Dollar Stores, Inc., seeking common-law and contractual indemnification. In two separate motions, Yankee moved for summary judgment dismissing the third-party complaint. Supreme Court denied both motions, finding issues of fact as to whether, under Workers' Compensation Law § 11, plaintiff sustained a grave injury and whether Yankee had contractually agreed to indemnify defendant. This appeal by Yankee ensued.

"Workers' Compensation Law § 11 permits an owner to bring a third-party claim against an injured worker's employer in only two circumstances: where the injured worker has suffered a 'grave injury' or the employer has entered into a written contract to indemnify the owner" (*Flores v Lower E. Side Serv. Ctr., Inc.*, 4 NY3d 363, 365 [2005]; *see Rodrigues v N & S Bldg. Contrs., Inc.*, 5 NY3d 427, 429-430 [2005]; *Auchampaugh v Syracuse Univ.*, 67 AD3d 1164, 1164 [2009]). Yankee asserts that defendant failed to raise an issue of fact as to the applicability of either exception to the prohibition against third-party claims against employers. We address these exceptions in turn.

A "grave injury" is defined, in relevant part, as "an acquired injury to the brain caused by an external physical force resulting in permanent total disability" (Workers' Compensation Law § 11). Although the statute does not define "permanent total disability," the Court of Appeals has determined that "a brain injury results in 'permanent total disability' under [Workers' Compensation Law § ] 11 when the evidence establishes that the injured worker is no longer employable in any capacity" (*Rubeis v Aqua Club, Inc.*, 3 NY3d 408, 413 [2004]). Here, even assuming that Yankee sustained its initial burden of establishing as a matter of law that plaintiff did not sustain a grave injury (*see Way v Grantling*, 289 AD2d 790, 793 [2001]), the evidence submitted in opposition to the motion was sufficient to raise a triable question of fact.

The medical evidence reveals that, as a result of the fall, plaintiff suffered a traumatic brain injury which included, among other things, a posterior temporal contusion and a left frontal epidural hematoma. Melvin Steinhart, a psychiatrist who had performed an independent medical examination of plaintiff, reported that as a result of the brain injury plaintiff suffers from an inability to concentrate for long periods, significant loss of short-term memory, fatigue and psychomotor slowing, as well as depression symptoms directly resulting from the catastrophic injuries sustained in the accident. George Forrest, the physician with whom plaintiff has been treating since the accident, similarly averred that plaintiff continues to suffer from cognitive difficulties, such as poor concentration and memory deficits, as a consequence of his brain injury. Both Steinhart and Forrest agreed that, given that plaintiff's cognitive deficits persist more than four years after the accident, these symptoms will not improve with time or rehabilitation and, therefore, are permanent in nature. They also unequivocally opined that the symptoms and residual effects caused by the brain injuries suffered as a result of the accident, particularly plaintiff's poor cognitive functioning, render him permanently and totally disabled and unable to maintain any type of gainful employment either on a full or part time basis. This evidence, coupled with the fact that plaintiff has been awarded Social Security disability benefits, is sufficient to raise a material question of fact (*see Way v Grantling*, 289 AD2d at 793; *see also Mendez v Union Theol. Seminary in City of N.Y.*, 26 AD3d 260, 261 [2006]).

We reach a different conclusion, however, with respect to defendant's contractual indemnification claim. The proof submitted on the motion established that K.R. Flike Sales, Inc. entered into a one-year written lease with defendant commencing on

August 1, 1998, which contained an indemnification clause requiring K.R. Flike Sales, as tenant, to indemnify defendant for any liability, damages and claims resulting from injury to any person caused solely by K.R. Flike Sales' negligence. Following the expiration of the lease on July 31, 1999, K.R. Flike Sales continued to occupy the warehouse as a holdover tenant. According to Keith Flike, who was the owner of both Yankee and K.R. Flike Sales, Yankee began using the warehouse to store products at some point during that time and, after dissolution of K.R. Flike Sales in 2002, continued to occupy the warehouse. Flike testified further that, although Yankee had no written lease agreement for all these years, it continued to pay rent to defendant.

We fully agree with defendant that when a tenant, such as K.R. Flike Sales, remains in possession upon the expiration of a lease, "it is a holdover and, pursuant to common law, there is implied a continuance of the tenancy on the same terms and subject to the same covenants as those contained in the original instrument" (*City of New York v Pennsylvania R.R. Co.*, 37 NY2d 298, 300 [1975]; *accord Levy v Carol Mgt. Corp.*, 260 AD2d 27, 33 [1999]; *see Del Giacco v Noteworthy Co.*, 175 AD2d 516, 517 [1991]). Nor do we quarrel with the general proposition that, where a party other than the lessee is shown to be in possession of the leased premises and is paying rent, a presumption arises that the lease has been assigned to that party (*see Mann v Munch Brewery*, 225 NY 189, 193 [1919]; *Gateway I Group, Inc. v Park Ave. Physicians, P.C.*, 62 AD3d 141, 147 [2009]; *Salvatore R. Beltrone Marital Trust II v Lavelle & Finn, LLP*, 13 AD3d 869, 870 [2004]). Nevertheless, Workers' Compensation Law § 11 permits a third-party indemnification claim against the employer *only* where such claim is "based upon a provision in a *written contract* entered into prior to the accident or occurrence by which *the employer* had *expressly agreed* to . . . indemnification of the claimant or person asserting the cause of action for the type of loss suffered" (emphasis added). Here, there is clearly no such written agreement between *Yankee* and defendant whereby Yankee *expressly* agreed to indemnify defendant. Rather, the only express agreement to indemnify is contained in a long expired lease between defendant and K.R. Flike Sales. Whether an assignment of that expired lease to Yankee could be presumed as a consequence of its possession of the premises and payment of rent is simply irrelevant to our analysis under Workers' Compensation Law § 11. Had the Legislature intended that an implied agreement—or anything less than the employer's express written agreement—to indemnify would suffice, it could have easily done so by omit-

ting the word "expressly" prior to the word "agreed." The Legislature chose to use that language, however, and we must adhere to the literal terms of the statute in so interpreting it (*see Flores v Lower E. Side Serv. Ctr., Inc.*, 4 NY3d at 367; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]). Indeed, as the relevant portions of Workers' Compensation Law § 11 were enacted to abrogate employers' liability to third parties for injury to their employees except in the most limited circumstances, the exception "[r]equiring the indemnification contract to be clear and *express* furthers the spirit of the legislation" (*Tonking v Port Auth. of N.Y. & N.J.*, 3 NY3d 486, 490 [2004] [emphasis added]). Thus, inasmuch as there is no writing whereby Yankee expressly agreed to indemnify defendant, summary judgment dismissing defendant's contractual indemnification claim should have been awarded (*see O'Berg v MacManus Group, Inc.*, 33 AD3d 599, 599-600 [2006]; *Lipshultz v K & G Indus.*, 294 AD2d 338, 338-339 [2002]; *see also Vicente v RJR Mech., Inc.*, 2010 NY Slip Op 31922[U], *5-6 [2010]).

Mercure, J.P., Rose, Malone Jr. and Egan Jr., JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied third-party defendant's motion for summary judgment dismissing the contractual indemnification cause of action; motion granted to that extent and said cause of action dismissed; and, as so modified, affirmed.