El Juez Asociado Señor Kolthoff Caraballo
emitió la opinión del Tribunal.
H — I
Los hechos de este caso están muy bien expuestos en la sentencia de la cual se recurre, por lo que pasamos a re-producirlos casi en su totalidad.
El 28 de marzo de 2011, H.R., Inc. (H.R. o recurrida) presentó una demanda sobre vicios de construcción, incum-plimiento de contrato y daños y perjuicios. En términos generales, alegó que suscribió un contrato de obra con Vis-sepó & Diez Construction Corporation (Vissepó o peticiona-ria) el 26 de diciembre de 2000 para la construcción del Hotel Rincón of the Seas por $8,247,767 y que dicha parte incumplió con las obligaciones que contrajo al suscribir el referido contrato.(1)
*600 En febrero de 2005, luego de dos años de comenzar a operar el referido hotel, H.R. detectó un consumo en exceso de lo normal en su facturación de agua. A principios del 2006 descubrió que la razón para el exceso de consumo eran varias roturas en las tuberías soterradas y otros pro-blemas con la obra realizada por Vissepó y un subcontra-tista de Vissepó. En particular, la recurrida alegó que los defectos eran atribuibles a que no se siguieron las especi-ficaciones de los planos de construcción en las labores que Vissepó realizó. Entre las tareas cuestionadas se encuen-tran la instalación de las tuberías subterráneas del esta-blecimiento, el relleno del terreno y la construcción de la cisterna. H.R. adujo también que el incumplimiento de Vis-sepó ocasionó roturas y cuantiosos gastos por la pérdida de agua y las reparaciones necesarias. Por todos los percances producto de la obra realizada por Vissepó, la recurrida so-licitó $1,250,000 en su demanda.
Así las cosas, el 4 de marzo de 2011 la peticionaria pre-sentó una moción en la que anunció su representante legal y solicitó una prórroga para presentar su alegación responsiva. Acto seguido, el 9 de mayo de 2011 la peticio-naria presentó su Contestación a la Demanda. En esencia, Vissepó negó las imputaciones de negligencia o incumpli-miento contractual y admitió la alegación número 6 de la demanda, en cuanto a la existencia del contrato AIAA101-1997 otorgado por las partes para realizar las obras de construcción. Sin embargo, a pesar de tener conocimiento del contrato desde el 2000, no mencionó que la controversia debía ser dilucidada mediante arbitraje ni solicitó la sus-pensión de los procedimientos hasta que se procediera con los métodos alternos como fue pactado en el contrato de construcción.
Cabe señalar que, como parte del descubrimiento de prueba, las partes se cursaron pliegos de interrogatorios y *601 producción de documentos que se contestaron. En dichos trámites, las partes procedieron a preparar un informe del manejo del caso al amparo la Regla 37.1 de Procedimiento Civil, 32 LPRAAp. V, e intercambiaron literalmente miles de documentos. Además, H.R. notificó a Vissepó el informe de su perito, el Ing. Gregorio Hernández, el cual Vissepó tuvo por varios meses.(2)
El 16 de noviembre de 2011 se celebró la vista de estado de los procedimientos, en la cual H.R. informó al tribunal que había producido todos los documentos que entendió relevantes. Asimismo, manifestó que ya se habían prepa-rado otros informes sobre las deficiencias en la obra reali-zada por Vissepó. Por su parte, el representante legal de Vissepó solicitó un término para que su perito rindiera un informe y para deponer al perito de la parte demandante.(3)
Luego de nueve meses de haber contestado la demanda y de varios incidentes procesales relacionados con el descu-brimiento de prueba, Vissepó presentó un documento titulado Contestación Enmendada a la Demanda, esto sin solicitar permiso del tribunal mediante moción o contar con el consentimiento escrito de la parte demandante, como lo requiere la Regla 13.1 de Procedimiento Civil.(4) En su contestación enmendada reclamó por primera vez su derecho a arbitraje y adujo que el tribunal de instancia carecía de jurisdicción para atender la controversia de autos debido a que H.R. no había agotado los remedios para la resolución de reclamaciones, según pactado por las partes.(5)
*602 Asimismo, el 23 de enero de 2012 Vissepó presentó una Moción de Sentencia Sumaria por Falta de Jurisdicción, en la cual planteó nuevamente el asunto sobre los métodos alternos. En síntesis, la peticionaria sostuvo que las condi-ciones del contrato eran claras, libres de toda ambigüedad y disponían la utilización de métodos alternos de resolu-ción de disputas, en particular el arbitraje, como condición precedente a la presentación de un pleito ante el tribunal. Adujo que ello privaba de jurisdicción al tribunal de ins-tancia y que, por lo tanto, procedía la desestimación de la demanda instada en su contra.
Posteriormente, el 31 de enero de 2012 H.R. se opuso a que el Tribunal de Primera Instancia aceptara la Contes-tación Enmendada a la Demanda de la peticionaria por violar las Reglas de Procedimiento Civil. Además, presentó una Oposición a Moción Titulada “Moción de Sentencia Su-maria por Falta de Jurisdicción”. Esencialmente, la recu-rrida adujo que los actos de la peticionaria, anteriores a la presentación de la Demanda(6) y durante los trámites procesales ante el tribunal de instancia, demostraron que Vis-sepó renunció a la resolución de las reclamaciones por me-dio del arbitraje.
En su oposición, H.R. indicó que Vissepó no argumentó oportunamente como una defensa afirmativa la resolución del conflicto por medio del arbitraje. Añadió que paralizar el caso le causaría graves daños económicos debido a la organización de la prueba descubierta durante los procedi-mientos, la contratación de peritos y el descubrimiento de prueba que ahora posee Vissepó, la cual no tendría derecho a poseer en el proceso de arbitraje. A su vez, las partes presentaron sus respectivas réplicas y dúplicas.
Por su parte, el 7 de febrero de 2012 Vissepó anunció la *603 contratación del Ing. Emiliano Ruiz como su perito y pre-sentó una Demanda Contra Tercero para traer al pleito a los subcontratistas Efraín González, S.E., y HQJ Plumbing Contractors, Inc. El 28 de junio de 2012, el tribunal de instancia celebró una vista argumentativa y las partes tu-vieron la oportunidad de discutir sus respectivas alegaciones. Así las cosas, el foro primario dictó la Resolu-ción el 30 de julio de 2012. En lo pertinente, la ilustrada sala de instancia determinó, como parte de sus conclusio-nes de derecho, lo siguiente:
7. No obstante la moción de sentencia sumaria radicada por Vissepó & Diez alegando falta de jurisdicción, en este caso no estamos ante un problema de falta de jurisdicción, sino ante una renuncia de una defensa afirmativa por parte del deman-dado Vissepó & Diez. Es importante recalcar que el deman-dado Vissepó & Diez es un contratista experimentado en este tipo de contratación bajo AIA, y tenía (o debió tener) conoci-miento sobre sus defensas afirmativas que surgen del contrato del 26 de diciembre de 2000, incluyendo los métodos alternos de resolución de disputas. No obstante, Vissepó & Diez no le-vantó a tiempo la defensa de los métodos alternos de resolu-ción por lo que la renunció.
8. Además, la conducta de Vissepó & Diez al participar ac-tivamente en el descubrimiento de prueba, presentando inte-rrogatorios, presentando requerimientos de documentos, descu-briendo prueba, participando en vistas y anunciando que nombró un perito y que tomará deposiciones y, más impor-tante, radicando una demanda de tercero el 2 de febrero de 2012, es inconsistente con su reclamo del uso de métodos alternos. (Enfasis nuestro).(7)
Además denegó la sentencia sumaria determinando que:
9. Por último, como demuestra la Declaración Jurada del Sr. Arnaldo Ruiz y los anejos a la Oposición, existen controversias sustanciales de hechos sobre si Vissepó & Diez renunció a los métodos alternos de resolución de disputas en el Contrato antes de la radicación de la Demanda en este caso.(8)
*604 Inconforme con el referido dictamen, el 14 de agosto de 2012 la peticionaria presentó una Moción de Reconsidera-ción. El tribunal de instancia emitió una orden en esa misma fecha, notificada el 15 de agosto de 2012, en la que denegó la solicitud de reconsideración.
Insatisfecho con dicha determinación, el 30 de agosto de 2012, Vissepó recurrió al Tribunal de Apelaciones me-diante un recurso de certiorari. En esencia, alegó que el Tribunal de Primera Instancia (TPI) erró al determinar que la resolución por métodos alternos pactados en el con-trato es una defensa afirmativa que se renuncia si no se plantea en su primera alegación responsiva. Además, alegó que el TPI erró al considerar su actuación en el pleito como una renuncia al proceso de arbitraje.
El 31 de octubre de 2012, el Tribunal de Apelaciones emitió su Resolución en la cual denegó el recurso. Aún in-conforme, el 7 de diciembre de 2012 la peticionaria pre-sentó un recurso de certiorari ante este Tribunal y señaló la comisión de los errores siguientes:
Erró el Tribunal de Apelaciones al relevar a H.R. de sus obli-gaciones contractuales resolviendo que la Regla 6.3 de Proce-dimiento Civil establece que el arbitraje y otros métodos alter-nos de resolución de conflictos pactados contractualmente constituyen defensas afirmativas que se renuncian si no se levantan expresamente en la primera contestación a la demanda.
Erró el Tribunal de Apelaciones al resolver qué V & D [Vissepó] actuó inconsistentemente y renunció a su derecho a exigir que H.R. cumpliese su obligación contractual de agotar los métodos alternos por haber hecho unas gestiones como parte de un descubrimiento de prueba inicial y al radicar una demanda contra tercero.
Erró el Tribunal de Apelaciones al denegar la contestación en-mendada a la demanda.
Erró el Tribunal de Apelaciones al denegar la expedid [ó] n del auto solicitado, confirmando as[í] el dictamen del TPI me-diante el cual se deciar [ó] sin lugar la solicitud de sentencia sumaria presentada por V & D [Vissepó] ,(9)
*605 Con el beneficio de las comparecencias de las partes, procedemos a resolver.
H-i 1 — 1
Nuestro ordenamiento jurídico permite que las partes en un contrato puedan obligarse a llevar ante un árbitro, mediante el proceso de arbitraje, las posibles controversias futuras derivadas de su relación contractual. Es por ello que el arbitraje es una figura jurídica inherentemente contractual y es exigible solamente cuando las partes así lo hayan pactado.(10)
En este sentido, en Puerto Rico existe una vigorosa política pública a favor del arbitraje.(11) Esta política se recoge en la Ley Núm. 376 de 8 de mayo de 1951(12) y está motivada por el interés del Estado de facilitar la solución de disputas por la vía más rápida, flexible y menos onerosa que los tribunales para la resolución de controversias que emanan de la relación contractual entre las partes. A su vez, la política a favor del arbitraje no es extraña en otras jurisdicciones. En la esfera federal, el proceso de arbitraje está regulado por la Ley Federal de Arbitraje, 9 USCA sec. 1 et seq. Esta aplica a contratos interestatales y establece que las cláusulas de arbitraje en los contratos son válidas, irrevocables y mandatorias. Cuando se pacta un proceso de arbitraje en un contrato, los tribunales carecen de discreción para determinar su eficacia y tienen que dar cumplimiento al arbitraje según lo acordado.(13)
*606 En lo pertinente al arbitraje, hemos determinado consistentemente que las partes que voluntariamente se someten a un procedimiento de arbitraje deben agotar los remedios contractuales antes de acudir a los tribunales, salvo que exista justa causa para obviarlos.(14) Ello responde a varias razones, tanto del derecho de obligaciones y contratos como de orden público.(15) De esta forma, las partes acuerdan voluntariamente limitar la jurisdicción de los tribunales sobre su persona para dar paso al proceso de arbitraje.(16) Esto, pues se favorece la voluntad de las partes cuando estas deciden cuál es el mecanismo idóneo para la resolución de sus disputas. Así, el arbitraje constituye un medio más apropiado y deseable que los tribunales para la resolución de controversias que emanan de la relación contractual entre las partes, ya que es menos técnico, más flexible y menos oneroso.(17)
No obstante, hemos reconocido limitadas excepciones a la regla del cumplimiento previo de la obligación de arbitrar, entre ellas, cuando las partes renuncian voluntariamente a ese derecho. En lo pertinente, en McGregor-Doniger v. Tribunal Superior, 98 DPR 864 (1970), establecimos que “[e]l peso de establecer tal renuncia recae sobre el interventor. Existe una política vigorosa en favor del arbitraje y una marcada renuencia de los tribunales en concluir que se ha incurrido en una renuncia del derecho *607 de arbitraje. Toda duda que pueda existir debe ser resuelta a favor del arbitraje”. (Cita omitida).(18)
Sin embargo, tanto en McGregor-Doniger, supra, como en PaineWebber, Inc. v. Soc. de Gananciales, 151 DPR 307 (2000), distinto al caso de autos, la parte reclamó que el asunto se debía dilucidar ante un árbitro y no en el tribunal desde su primera alegación responsiva, esto es, en la contestación a la demanda. Esto fue el factor determinante y así lo expresamos como sigue:
Este caso se distingue del de Cornell & Company v. Barber & Ron Company, 360 F.2d 512 (D.C.Cir.1966), en que en éste último no se invocó el arbitraje en la contestación y además se llevaron a cabo múltiples actuaciones de participación activa en el litigio inconsistentes con el derecho de arbitraje. Gahon Iron Works & Mfg. Co. v. J.D. Adam Co., 128 F.2d 411 (7th Cir.1942) no es de aplicación pues resolvió que el demandante había renunciado al derecho de arbitraje al optar por litigar la cuestión en los tribunales.
Las actuaciones de la peticionaria no constituyeron una renuncia de su derecho de arbitraje pues en su primera alegación en el caso invocó tal derecho y solicitó la suspensión de los procedimientos hasta que se procediese al arbitraje pactado en el contrato. Sus actuaciones subsiguientes fueron limitadas y no inconsistentes con su posición inicial de insistir en el arbitraje. Hilti, Inc., supra; Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402, 412 (2d Cir.1959); Almacenes Fernández, S.A. v. Golodeltz, 148 F.2d 625, 627 (2d Cir.1945). (Énfasis nuestro).(19)
En PaineWebber, Inc. v. Soc. de Gananciales, supra, págs. 312-313, reafirmamos nuestras palabras anteriores cuando expresamos lo siguiente:
En McGregor-Doniger v. Tribunal Superior, ante, como en el caso que nos ocupa, se alegaba que la contestación a la demanda, la alegación de defensas especiales y la toma de depo- *608 siciones allí ocurridas eran actos inconsistentes con el derecho de arbitraje y que, por lo tanto, tales actuaciones de participa-ción activa en el litigio constituían una renuncia del derecho de arbitraje. Resolvimos que “[l]as actuaciones de la peticiona-ria no constituyeron una renuncia de su derecho de arbitraje pues en su primera alegación en el caso invocó tal derecho y solicitó la suspensión de los procedimientos hasta que se pro-cediese al arbitraje pactado en el contrato”. McGregor-Doni-ger, ante. Reiteramos en el día de hoy lo expresado hace treinta (30) años en el caso antes citado. (Énfasis en el original y nues-tro, y corchetes en el original).
Como adelantamos, es derecho conocido que cuando las partes pactan el arbitraje y este derecho se reclama en la primera alegación responsiva, lo que procede es detener los procedimientos ante el tribunal y someter el asunto a arbitraje.(20) Pero, esta no es la situación que nos ocupa en el caso de epígrafe. Hoy nos corresponde resolver la situación cuando un demandado plantea por primera vez el derecho a arbitraje luego de contestar la demanda, durante el descubrimiento de prueba, y luego de múltiples gestiones en el proceso judicial.
Aunque el reclamos de arbitraje por el demandado se trata como una defensa afirmativa en Puerto Rico, lo cierto es que la Asamblea Legislativa nunca ha incluido el arbitraje como una defensa afirmativa. No obstante, este Tribunal ha reconocido que, una vez planteado en la contestación a la demanda, se debe paralizar el procedimiento en los tribunales, por lo que se ha creado cierta confusión.
Como hemos mencionado, por décadas se ha enfatizado una fuerte política pública a favor del arbitraje, mas esta no es una preferencia absoluta sobre cualquier otra política pública.(21) En ocasiones los tribunales debemos dejar sin efecto la cláusula de arbitraje, a pesar de ser válida, por-que la parte que reclama el derecho a arbitraje ha actuado inconsistentemente con este reclamo. Así ha sido recono- *609 cido consecuentemente por los tribunales federales cuando un demandado, conociendo su derecho a arbitrar, decide ignorar este derecho y participar activamente en el litigio en los tribunales.(22) No obstante lo anterior, la tarea de determinar si un demandado ha renunciado a su derecho al arbitraje no debe tomarse livianamente, sino que este análisis debe realizarse a la luz de la fuerte política pública a favor del arbitraje.(23)
En Estados Unidos, la determinación de arbitrabilidad de una controversia no está basada en un criterio rígido uniforme, sino que es tomada caso a caso, según la jurisdicción. Por ejemplo, algunas jurisdicciones atienden el asunto como si el arbitraje se tratara de una defensa afirmativa, a la que se renuncia si no se reclama en la primera alegación responsiva. (24) Por otra parte, hay jurisdicciones que consideran que únicamente omitir tal reclamación en la contestación de la demanda no constituye una renuncia, aunque la participación activa del litigante en el tribunal sí se interprete como una renuncia al arbitraje.(25)
Como ya hemos visto, podemos concluir que a nivel federal se aplica una gran variedad de factores para determinar cuándo la conducta exhibida por la parte demandada constituye una renuncia al proceso de arbitraje. Los factores comúnmente utilizados son: (1) si las partes han participado activamente en el litigio en corte; (2) si han realizado actos incompatibles con el proceso de arbitraje; (3) si el proceso de litigación ha sido sustancialmente ini-ciado; (4) si las partes se encuentran en una etapa avan- *610 zada en la preparación para el pleito justo cuando se re-clama el arbitraje; (5) cuánto tiempo se han demorado las partes en solicitar que se detengan los procedimientos en el tribunal para hacer valer la cláusula de arbitraje; (6) el perjuicio causado a la parte contraria por la demora del demandado en reclamar el arbitraje; (7) si el demandado ha reclamado el arbitraje en su contestación a la demanda; (8) si el demandado ha presentado una reconvención contra el demandante; (9) si el demandado ha presentado una demanda contra tercero por el mismo asunto; (10) si el de-mandado se ha beneficiado del proceso en los tribunales, y (11) si el reclamante busca litigar nuevamente asuntos en los méritos del caso sobre los cuales el tribunal no le dio la razón.(26)
Si bien no existe un criterio estricto uniforme en cuanto a qué actos constituyen una renuncia al derecho a arbitrar, ciertamente la mayoría de las jurisdicciones han definido que la conducta exhibida en corte es crucial para determi-nar si el demandado ha renunciado al arbitraje. Tanto es así, que varios tribunales apelativos a nivel federal han determinado que una cláusula que estipule que las partes no podrán renunciar al arbitraje por medio de su conducta se entendería nula si las partes participan activamente en el litigio en corte.(27)
En cuanto a Puerto Rico, el Tribunal federal para el Distrito de Puerto Rico dictó recientemente —el 23 de septiembre de 2013— una sentencia que sin duda resulta persuasiva. En Pérez v. Horizon Lines, Inc., 2013 WL 5346856, citando a Jones Motor Co., Inc. v. Chauffeurs, Teamsters and Helpers Local Union No. 633 of New Hampshire, 671 F.2d 38 (5to Cir. 1982), y en el contexto de *611 una controversia de si correspondía o no dar paso a un arbitraje, el Tribunal de Distrito expresó lo siguiente:
Entre los factores que resultan pertinentes al evaluar una renuncia se considerará si el reclamante ha participado en el pleito en corte, si se ha puesto en marcha sustancialmente la maquinaria propia de la litigación y en qué momento la parte demandada le comunicó a la demandante su intención de re-currir al arbitraje, si las partes ya se habían adentrado en la preparación del litigio, si los demandados se hubieran benefi-ciado del proceso de descubrimiento de prueba \propio del ám-bito judicial e inexistente en el del arbitraje] y si la tardanza afectó, indujo a error o perjudicó a la otra parte. Id. [, pág.] 44. En Jones Motor, el Primer Circuito determinó que la renuncia se había configurado cuando los demandantes se adentraron considerablemente en el proceso de descubrimiento de prueba y prepararon el caso con miras a obtener una sentencia sumaria. Id. El Tribunal concurre con lo decidido en Jones Motor. (Traducción y énfasis nuestros).(28)
Una situación muy particular ha sucedido en la jurisdicción de Nueva York, en la cual el Tribunal Supremo estatal ha considerado que el factor determinante al momento de tomar la decisión es el tipo de participación del litigante en el proceso en corte.(29) Dicho tribunal hace una distinción entre la litigación defensiva y la afirmativa. El propósito de esta diferenciación es el siguiente: si el litigante invoca el proceso judicial defensivamente, no se entiende renunciado el derecho de arbitraje; por otra parte, si el litigante utiliza el sistema judicial de manera afirmativa, se infiere *612 que se ha renunciado al derecho a arbitraje. Se entiende que se invoca afirmativamente el proceso judicial cuando el litigante solicita de forma fehaciente los beneficios de la litigación, actuación que resulta incompatible con su posterior reclamo de arbitraje.(30)
Por otra parte, se entiende que se utiliza defensiva-mente el proceso judicial cuando el demandado solo inte-ractúa con el sistema judicial para atender una acción en su contra. A modo de ejemplo, y sin pretender hacer un listado exhaustivo, se considera que el demandado actúa defensivamente siempre que contesta los requerimientos del demandante, sin cursar requerimiento alguno por su parte, o cuando simplemente da estricto cumplimiento a las órdenes del tribunal.
De igual forma, no se renuncia al derecho de arbitraje en aquellas situaciones en las cuales existe una necesidad urgente de preservar el statu quo y se requiere una acción inmediata que no puede esperar por el nombramiento de un árbitro; entiéndase, aquellos recursos interdictales en los cuales el promovente interesa detener acciones que puedan afectar el statu quo. En estos casos, la presenta-ción del recurso en el sistema judicial no se interpretará como acciones incompatibles con el posterior reclamo de arbitrar.
A la luz de todo lo anterior, nos parece razonable, justo y conveniente adoptar el escrutinio utilizado en la jurisdicción de Nueva York para determinar si un litigante ha renunciado al derecho de arbitraje por su conducta. Por ello determinamos hoy que para que una parte prevalezca en su alegación de que la parte demandada renunció a su derecho de arbitraje, no basta con alegar que la parte demandada no reclamó ese derecho entre las defensas *613 afirmativas. La parte deberá probar además que la parte demandada realizó actos afirmativos sin reclamar previa-mente su derecho a arbitraje.
En conclusión, el simple acto de contestar la demanda sin mencionar el derecho a arbitraje no implica per se una renuncia a tal derecho. Para que este derecho se entienda renunciado, el demandado deberá, además, haber utilizado afirmativamente el sistema judicial conociendo que tenía un derecho a arbitrar, el cual no reclamó previamente. Sin embargo, ello no impide que los tribunales puedan decretar, por ejemplo, que debido a la etapa avanzada de los procedimientos, el demandado incurrió en mala fe o incuria al alegar su derecho a arbitraje.
HH I — I HH
Pasemos ahora a resolver la controversia según lo antes expuesto. En la situación que nos ocupa no hay duda de que las partes otorgaron un contrato en el cual se obligaron a someter a métodos alternos cualquier disputa que sur-giera de su relación contractual. Así lo establecieron en las Cláusulas 4.4, 4.5 y 4.6 del contrato.
No obstante, sin hacer caso a esto, H.E. acudió al Tribunal de Primera Instancia e instó una demanda en contra de Vissepó alegando daños sufridos por deficiencias en los trabajos contratados. Por su parte, Vissepó contestó la de-manda reconociendo la existencia del contrato, sin mencio-nar ni reclamar su derecho a arbitraje. Así las cosas, am-bas partes utilizaron el proceso judicial afirmativamente al realizar el descubrimiento de prueba e intercambiar miles de documentos. Como parte del descubrimiento de prueba, Vissepó recibió el informe del perito de H.R. y tuvo la opor-tunidad de estudiarlo por varios meses. Luego de esto, anunció la contratación de un perito para refutar el in-forme de la parte demandante. Además, Vissepó presentó *614 una demanda contra tercero para responsabilizar al sub-contratista en el proceso judicial por las deficiencias en la obra sufridas por H.R. Todos estos actos tienden a demos-trar que Vissepó pretendía litigar el asunto en el tribunal. La conducta de Vissepó resulta claramente incompatible con su posterior reclamo de paralizar los procedimientos por falta de jurisdicción y comenzar un proceso de arbitraje.
Ciertamente, Vissepó renunció a su derecho de ar-bitraje, toda vez que sometió interrogatorios a H.R., soli-citó el descubrimiento de prueba, presentó un perito y pre-sentó una demanda contra tercero. Como ya expresamos, un demandado no renuncia a su derecho al arbitraje cuando contesta la demanda o, incluso, cuando responde las solicitudes de descubrimiento de la parte demandante, siempre y cuando lo haga de modo defensivo. Sin embargo, al momento cuando, sin haber reclamado previamente tal derecho, el demandado —como es en el caso de autos— uti-liza el proceso judicial afirmativamente, renuncia a invo-car posteriormente su derecho contractual a dilucidar la controversia ante un árbitro.
Por la conducta exhibida, determinamos que Vissepó re-nunció a su derecho al arbitraje al haber utilizado el pro-ceso judicial de forma afirmativa, beneficiándose de este sin reclamar previamente el arbitraje.
IV
Por todo lo anterior, se confirman las determinaciones de los foros a quo y se devuelve el caso al Tribunal de Pri-mera Instancia para la continuación de los procedimientos conforme a lo aquí resuelto.

Se dictará Sentencia de conformidad.

La Jueza Asociada Señora Pabón Charneco emitió una opinión concurrente, a la cual se unió el Juez Asociado Se-ñor Rivera García.

 El contrato utilizado fue el modelo AIA A201-1997, comúnmente utilizado en este tipo de obra y el cual contiene la siguiente cláusula sobre arbitraje:
“See. 4.6 ARBITRATION
“Sec. 4.6.1 Any claim arising out of or relate to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the ‘Owner’s Representative’ or 30 days after submission of the Claim to the ‘Owner Representative’, be subject to arbitration. Prior to arbitration, the parties shall endeavor to resolve disputes by *600 mediation in accordance with, the provisions of Section 4.5”. ALA. Document A201-1997, General Conditions of the Contract for Construction, Sec. 4.6, pág. 22.

 Apéndice de la Petición de certiorari, pág. 167.

 íd., pág. 196.

 La Regla 13.1 de Procedimiento Civil, 32 LPRA Ap. V, establece:
“Cualquier parte podrá enmendar sus alegaciones en cualquier momento antes de habérsele notificado una alegación responsiva, o si su alegación es de las que no admiten alegación responsiva y el pleito no ha sido señalado para juicio, podrá de igual modo enmendarla en cualquier fecha dentro de los veinte (20) días de haber notificadla] su alegación. En cualquier otro caso, las partes podrán enmendar su alegación únicamente con el permiso del tribunal o mediante el consentimiento por escrito de la parte contraria; y el permiso se concederá liberalmente cuando la jus-ticia así lo requiera. [...]”.

 Apéndice de la Petición de certiorari, págs. 28-29.

 La recurrida aduce que en una fecha anterior a la presentación de la demanda, la peticionaria le cursó un escrito en el cual le informaba sobre una deuda pendiente, que no atendería ninguna reclamación por sus trabajos hasta tanto esta se saldara por completo y que “en cualquier momento podrirá] acudir a los tribunales [...]”. (Énfasis nuestro). Apéndice de la Petición de certiorari, pág. 66.

 Apéndice de la Petición de certiorari, pág. 172.

 Íd.

 Petición de certiorari, págs. 7-8.

 S.L.G. Méndez-Acevedo v. Nieves Rivera, 179 DPR 359, 366-367 (2010).

 Quiñones v. Asociación, 161 DPR 668, 673 (2004). Véanse, además: Crufon Const. v. Aut. Edif. Púbs., 156 DPR 197, 205 (2002); Medina v. Cruz Azul de P.R., 155 DPR 735, 738 (2001); PaineWebber, Inc. v. Soc. de Gananciales, 151 DPR 307, 313 (2000).

 32 LPRA sec. 3201 et seq.

 S.L.G. Méndez-Acevedo v. Nieves Rivera, supra, pág. 368. Véanse, además: *606 Municipio Mayagüez v. Lebrón, 167 DPR 713, 721; Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 US 1, 24 (1983).

 Vélez v. Serv. Legales de P.R., Inc., 144 DPR 673 (1998). Véanse, además: Pagán v. Fund. Hosp. Dr. Pila, 114 DPR 224 (1983); Quiñones v. Asociación, supra.

 Vélez v. Serv. Legales de P.R., Inc., supra, pág. 682.

 Las cláusulas de selección de foro no afectan la jurisdicción de los tribunales sobre la materia. En Unisys v. Ramallo Brothers, 128 DPR 842 (1991), aclaramos que “[l]as partes mediante contrato no pueden otorgar ni privar de jurisdicción sobre la materia a un tribunal. Sólo el Estado, a través de sus leyes, puede hacerlo así”. íd., pág. 862 esc.5.
No obstante, la falta de jurisdicción sobre la persona es un derecho individual al que se puede renunciar.

 Pérez v. Autoridad Fuentes Fluviales, 87 DPR 118, 127 (1963).

 McGregor-Doniger v. Tribunal Superior, 98 DPR 864, 869 (1970). Este caso fue revocado posteriormente por Walborg Corp. v. Tribunal Superior, 104 DPR 184 (1975), en cuanto a otros extremos. Véanse, además: PaineWebber, Inc. v. Soc. de Gananciales, supra; S.L.G. Méndez Acevedo v. Nieves Rivera, supra.

 McGregor-Doniger v. Tribunal Superior, supra, págs. 869-870.

 PaineWebber, Inc. v. Soc. de Gananciales, supra, págs. 312-313.

 Walborg Corp. v. Tribunal Superior, supra, pág. 187.

 "A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right”. Cornell & Co. v. Barber & Ross Co., 360 F.2d 612, 513 (D.C. Cir. 1966).

8) PaineWebber, Inc. v. Soc. de Gananciales, supra, pág. 312.

 State ex rel. Barden and Roberson Corp. v. Hill, 208 W.Va 163, 168-169 (2000); Finlayson v. Waller, 134 P.2d 1069 (1943); Gallon Iron Works & Mfg. Co. v. J.D. Adams Mfg. Co., 128 F.2d 411 (7mo Cir. 1942); The Belize v. Steamship Owners Operating Co., Inc., 25 F.Supp. 663 (N.Y. 1938).

 Zuckerman Spaeder, LLP v. Auffenberg, 646 F.3d 919 (D.C. Cir. 2011); Cornell & Co. v. Barber & Ross Co., supra.

 Véanse: Leadertex, Inc. v. Morganton Dyeing & Finishing Corp., 67 F.3d 20 (2do Cir. 1995); Pérez v. Horizon Lines, Inc., 2013 WL 5346856.

 Gray Holdco, Inc. v. Cassady, 654 F.3d 444 (3er Cir. 2011); National Union Fire Ins. Co of Pittsburgh, P.A. v. NCR Corp., 376 Fed.Appx. 70 (2do Cir. 2010).

 “Relevant factors to consider when assessing waiver include whether the party has actually participated in the lawsuit, whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit by the time an intention to arbitrate was communicated by the defendant to the plaintiff, whether defendants had taken advantage of judicial discovery procedures not available in arbitration, and whether the other party was affected, misled, or prejudiced by the delay. Id. at 44. In Jones Motor, the First Circuit found waiver when the defendants engaged in considerable discovery and prepared their case for summary judgment. Id. The court agrees with the holding in Jones Motor”. Pérez v. Horizon Lines, Inc., supra, citando a Jones Motor Co. v. Chauffeurs Teamsters and Helpers Local Union No. 633 of New Hampshire, 671 F.2d 38, 43 (1er Cir. 1982).

 Tengtu Intl. Corp. v. Pak Kwan Cheung, 24 A.D.3d 170, 172 (2005).

 Matter of Waldman v. Mosdos Bobov, Inc., 72 A.D.3d 983 (2010). Véanse, además: Stark v. Molod Spitz DeSantis & Starks, P.C., 9 N.Y.3d 59, 66 (2007); Flores v. Lower E. Side Serv. Ctr., Inc., 4 N.Y.3d 363, 372 (2005); Sherrill v. Grayco Bldrs., 64 N.Y.2d 261, 272 (1985); Fein v. General Elec. Co., 40 A.D.3d 807 (2007).